386 Mass. 826 (1982)
438 N.E.2d 327
BARBARA AUGUST & others[1]
vs.
DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY & another.[2]
Supreme Judicial Court of Massachusetts, Middlesex.
April 8, 1982.
July 22, 1982.
Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.
Alan D. Tuttman for the plaintiffs.
George J. Mahanna, Assistant Attorney General, for Director of the Division of Employment Security.
LIACOS, J.
Eighteen employees of the Somerville School Department worked as teacher aides in a federally-funded Title I program during the academic year 1979-1980. Their contracts of employment for that year terminated June 23, 1980. They applied, unsuccessfully, for unemployment compensation benefits for the period running from that date until the resumption of school the following September. The decisions by local unemployment office examiners to deny *827 them benefits have been affirmed by both the director and the board of review of the Division of Employment Security, G.L.c. 151A, §§ 39-41, and by a judge of the Somerville District Court, G.L.c. 151A, § 42. The claimants bring their appeal here under § 42. We affirm.
The employees argue that, at the time their applications for benefits were denied, they did not have "reasonable assurance" that they would be performing in the same, or in a similar, capacity for the school department during the 1980-1981 school year, and thus were not excluded from unemployment benefits by G.L.c. 151A, § 28A (b).[3] Seven of the employees challenge an additional ruling disqualifying them as not available for work without restrictions within the meaning of G.L.c. 151A, § 24 (b).[4]
The decision of the director was made after group hearings held on several days in September, 1980, before a hearing review examiner.[5] The findings of the director's review examiner, with some supplementation from the record presented to us, comprise the source of our narrative.
Prior to the end of the school year, the claimants had completed applications for reemployment for the following *828 year.[6] Their names were among those submitted to the superintendent of schools before the end of the school year, in a list of those recommended for reemployment by the supervisor of the program. At the same time, and in response to anxiety on the part of the incumbent aides regarding anticipated school closings, this supervisor held informational meetings. The employees were informed that they were all being recommended for reemployment in September, but that, as in the past, final approval by the school committee of both the acceptance of the grant and of the appointments would be necessary. This meeting of the school committee was scheduled for August 25, 1980.[7]
The claimants filed for unemployment compensation on or before June 30, 1980. On that date the division sent two forms regarding each claimant to the school department. These were returned and postmarked July 2, 1980. On the first of these, the "Request for Separation and Wage Information," the reason checked by a member of the Title I supervisor's staff for separation was lack of work. On the second, entitled "Questionnaire Re Educational Institution Employees Claim for Unemployment Benefits," the same person indicated that, as of June 30, 1980, the claimants were neither under contract for, nor possessed of, a reasonable assurance of employment for the 1980-1981 academic year.[8]
*829 Shortly thereafter, each claimant received a copy of a letter dated July 3, 1980, signed by the superintendent of schools. The letter stated that the staffing needs for the coming year were being determined, but "we expect to rehire you before September 1980."[9] By a subsequent letter, dated August 26, 1980, the superintendent informed each claimant of the decision of the school committee authorizing her reemployment. Each claimant accepted the position offered and returned to work on September 2, 1980.
After consideration of the record, we conclude that the director did not err in deciding each claimant had reasonable assurance of reemployment for the next school year. G.L.c. 30A, § 14 (4), (7) (e). Garfield v. Director of the Div. of Employment Security, 377 Mass. 94, 96 (1979). In light of the past practice of the school department in rehiring all incumbent aides, coupled with information obtained at group meetings prior to the end of June, 1980, the claimants had assurance of reemployment ample enough to trigger the disqualifying provisions of G.L.c. 151A, § 28A (b).[10]
While it is true that a school department representative did indicate to the division, on the forms provided, that most of the claimants did not have such assurance as of June 30, 1980,[11] the subsequent letter from the school department, dated July 3, 1980, and received by the division, resolved any doubts on that score. This letter, signed by the superintendent of schools, was not sent in derogation of the power of the school committee to contract with school personnel. *830 G.L.c. 71, §§ 38, 59. Rather, it was sent by the superintendent in his capacity as the executive officer of the school committee, whereby he had broad powers regarding recommendations for employment contracts. See G.L.c. 71, § 38. Furthermore, the letter was not an offer of employment but was merely an indication of future employment prospects from the officer in the best position to give it.
Judgment affirmed.
NOTES
[1] Alia J. Baso, Susan Carleton, Dorothy Dorant, Jean Dumas, Suzanne Kelley, Claire Kelly, Mary Lane, Barbara Lynch, Electra Maravelis, Joan Mercer, Ruth O'Neil, Maureen Pino, Rosemary Rosa, Evelyn Ryan, Carol Sweeney, Carmella Toner, Laura Viola.
[2] School department of Somerville.
[3] General Laws c. 151A, § 28A (b), as appearing in St. 1977, c. 720, § 29, provides: "Benefits based on service in employment ... shall be payable in the same amount, on the same terms and subject to the same conditions as benefits payable on the basis of other service subject to this chapter, except that:... (b) with respect to services performed in any other capacity for an educational institution, other than an institution of higher education as defined in this chapter, benefits shall not be paid on the basis of such services to any individual for any week commencing during a period between two successive academic years or terms if such individual performs such services in the first of such academic years or terms and there is a reasonable assurance that such individual will perform such services in the second of such academic years or terms."
[4] General Laws c. 151A, § 24, reads in part: "An individual, in order to be eligible for benefits under this chapter, shall ... (b) Be capable of and available for work and unable to obtain work in his usual occupation or any other occupation for which he is reasonably fitted...." In light of the result we reach, we need not treat this issue.
[5] The parties agreed that the evidence presented would apply to all claimants.
[6] At an earlier date the department had been notified of the likelihood of Title I funds being available for the coming year, and had submitted proposals for funding for aide positions to the Department of Education.
[7] At the meeting on August 25, 1980, the school committee met and voted to accept the Title I funds and to authorize the superintendent of schools to hire all those persons whom he had recommended, among whom were the claimants. This was consistent with the practice of the committee for the ten previous years.
[8] From the findings of the hearing examiner, it would seem that questionnaires for at least one, and possibly three, of the claimants were returned without an indication to the division of either the reason for separation or the prospects for future employment. Claimant Pino apparently did not file her claim until the end of July, 1980. By this time the division was in possession of a letter from the school department indicating an expectation of rehiring Pino. See note 9, infra.
[9] It appears from the record that a copy of the same letter, together with a list of persons employed as aides for the 1979-1980 academic year, was sent to the division and received there on July 9, 1980. See G.L.c. 151A. §§ 38 (b), 39 (a).
[10] It is incumbent on a claimant to meet the burden of proof on all aspects of eligibility for benefits. Conley v. Director of the Div. of Employment Security, 340 Mass. 315, 320 (1960).
[11] This, too, was in apparent conformity with past practices. The supervisor of the Title I program testified that it had been his custom to fill out the forms in this manner, and that unemployment claims had in the past been routinely granted.