[No. 5631–7–III. Division Three. May 5, 1983.]

GARY L. JENNINGS, ET AL, *Respondents,* v. THE
DEPARTMENT OF EMPLOYMENT SECURITY,
*Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *Matthew J. Coyle, Assistant,* for appellant.

*Symone B. Scales* and *Judith A. Lonnquist,* for respon-

dents.

McINTURFF, J.—May substitute schoolteachers receive unemployment benefits between successive school years? The Department of Employment Security appeals from a judgment of the Superior Court ordering it to pay benefits to eight substitutes for the period between the 1977–78 and 1978–79 academic terms. The primary issue concerns our interpretation of RCW 50.44.050.

The eight teachers who are the respondents to this appeal were employed by the Seattle School District (District) as substitutes during the 1977–78 school year.[1] The number of days worked by the teachers varied—from a high of 162 full–time days to a low of 38. Five of the teachers held long–term assignments during the school year, *i.e.,* they were assigned to the same vacancy for 25 or more consecutive school days and were paid at the regular contract rate rather than the lower substitute rate.

In June 1978, the District sent the following notice to persons whose names appeared on its 1977–78 substitute list, including the eight teachers involved in this appeal:

Since you have satisfactorily served as a substitute during the 1977–78 school year, pursuant to RCW 50.40.050 [*sic*] you are officially notified that you have been selected to serve as a substitute teacher for the 1978–79 school year. If you choose to accept this assignment, please come to the certificated employees services and sign a substitute contract for 1978–79 by June 20, 1978.

The eight teachers signed substitute teacher contracts for the 1978–79 school year.

During the summer of 1978, the eight teachers also applied for unemployment benefits. Their applications were denied, based upon RCW 50.44.050, which provided:[2]

---

[1]This case was transferred to this division of the court pursuant to CAR 21 because another similar case was set in this court.

[2]RCW 50.44.050, enacted Laws of 1977, 1st Ex. Sess., ch. 292, § 18, was amended by Laws of 1980, ch. 74, § 2, and again amended by Laws of 1981, ch. 35, § 12.

[B]enefits based on service in an instructional, research or principal administrative capacity in an educational institution shall not be paid to an individual for any week of unemployment suffered after December 31, 1977, which commences during the period between two successive academic years . . . if the individual performs the services in the first of the academic years . . . and there is a contract or a reasonable assurance that the individual will perform services in the capacity for any educational institution in the second of the academic years . . .

Each teacher appealed to the appeal tribunal of the Department of Employment Security, where the appeals were combined for hearing purposes.

The principal issue at the hearing was the availability of substitute work in the coming school year. The evidence showed enrollment in the District was expected to decline by as much as 4,000 students in 1978–79. Furthermore, the District had some 300 teachers waiting for assignments as well as 135 teachers who had lost their contracts as a result of a reduction in force. Both the unassigned and riffed teachers had priority by contract over substitutes in competing for substitute jobs. By the time of the hearing, the District had already placed some of the unassigned teachers in long–term substitute positions which otherwise may have gone to regular substitutes.

On the other hand, the evidence also showed the substitute list for the new school year contained only 519 names at the time of the hearing. This figure was compared to the list for the past year which contained 1,154 names. Even with that number on the list, the District experienced some days in 1977–78 when it could not secure enough substitutes. While the District needs about 600 *available* substitutes in its pool to adequately cover temporary absences, the list itself has been kept near 1,000 names in the past few years. A witness for the District explained that the composition of active substitutes in the substitute pool is constantly changing during the school year because some people become unavailable for various reasons, including relocation or employment elsewhere. Finally, the District

pointed out that although enrollment had been declining for several years, the number of days worked by substitutes had increased slightly.

Following the hearing, the appeal tribunal decided the five teachers who had held long–term substitute positions in the 1977–78 school year were eligible for unemployment benefits and the remaining three teachers were not eligible for those benefits. The tribunal defined "reasonable assurance" as used in RCW 50.44.050 as meaning a written assurance of reemployment on essentially the same or better terms. It concluded the presence of the greater number of unassigned and riffed teachers with priority over regular substitutes prevented the District from giving a reasonable assurance of reemployment to long–term positions. As to short–term substitute positions, the tribunal concluded opportunities for employment were not greatly impaired. Appeals to the Commissioner of the Department of Employment Security were filed by the appropriate parties in all eight cases.

On review, the Commissioner concluded the tribunal had misinterpreted the statute. The Commissioner stated the statutory test is whether there is "a reasonable assurance that the individual will perform services *in the capacity* for any educational institution in the second of the academic years . . ." (Italics ours.) RCW 50.44.050. According to the Commissioner, "in the capacity" refers to the character of the work, namely, that it must be of a professional nature. The Commissioner noted the statute does not state or imply that the prospective employment in the succeeding academic year must be of an equal quantum or of an equal desirability in terms of wages, fringe benefits, or other working conditions. Since the record indicated the teachers probably would be afforded substitute work in the succeeding year, even though the work might be less lucrative and less frequent than in the past, the Commissioner concluded the teachers had a reasonable assurance of performing services "in the capacity." Thus, the Commissioner reinstated the original denial of benefits.

On appeal, the Superior Court reversed the Commissioner's decision. In its memorandum opinion, the court stated that the substitute teachers contract did not assure the teachers of anything. Specifically, the court noted:

> All future employment is based on contingencies that could not be considered as a declaration by the school district which would "reasonably assure" petitioners of re–employment under the same or better circumstances.

In this appeal, the Department of Employment Security assigns error to the Superior Court's conclusions that the Commissioner's decision was affected by error of law, was clearly erroneous and should be set aside.

On review, the pivotal issue is the meaning of "reasonable assurance" as the term is used in RCW 50.44.050. That statute was amended by the Washington Legislature in 1977 to conform to Congress' amendment of the Federal Unemployment Tax Act, 26 U.S.C. § 3304(a)(6)(A)(i).[3] The Legislature specifically provided that the document entitled "Draft Language and Commentary To Implement the Unemployment Compensation Amendments of 1976 PL 94–566", published by the United States Department of Labor, Employment and Training Administration, should be referred to when interpreting the provisions of the amendatory act. RCW 50.98.110.

Supplement 1 (December 7, 1976), to the Draft Language and Commentary interprets "reasonable assurance" as "requiring a specific act on the part of the school board to provide a written statement as to whether an employee has been given notification of returning to work in the same or a similar capacity . . ." In the instance of a substitute

---

[3]The federal act provided: "with respect to services in an instructional, research, or principal administrative capacity for an educational institution to which section 3309(a)(1) applies, compensation shall not be payable based on such services for any week commencing during the period between two successive academic years or terms . . . to any individual if such individual performs such services in the first of such academic years (or terms) and if there is a contract or reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms . . ."

teacher, if the "teacher is provided assurance that he/she will be retained on the 'active' substitute list for the ensuing school year, there is reasonable assurance that the individual will perform such services in the ensuing school year." Whether the teacher actually performs services as a substitute is material only as it reflects on the good faith of the original assurance.

A memo from the United States Department of Labor dated October 19, 1979, amplifies the foregoing interpretation:

> The heart of the problem of "a reasonable assurance" for substitute teachers is the nature of the work. The amount of work available cannot be determined. It is dependent on the number of regular teachers who will be absent during the school year. This is not susceptible to precise prediction. . . . In our view when an individual applies for and is accepted for work as a substitute teacher, the application and acceptance is made with the full knowledge of the realities of the situation: namely that there is no guarantee of work.

Several Pennsylvania cases have interpreted "reasonable assurance" of reemployment, as it appears in the Pennsylvania statute which corresponds to RCW 50.44.050. In *Goralski v. Commonwealth,* 48 Pa. Commw. 39, 408 A.2d 1178, 1180 (1979), the court held a substitute teacher had a reasonable assurance of reemployment when her name was placed on the substitute list for the ensuing year. No guaranty of employment was required. In *Louderback v. Commonwealth,* 48 Pa. Commw. 501, 409 A.2d 1198 (1980), the court held the employment relationship of substitute teachers remains viable, even in the face of layoffs of full–time teachers, so long as the school district expects to offer substitute work as it becomes available. In *Neshaminy Sch. Dist. v. Commonwealth,* 57 Pa. Commw. 543, 426 A.2d 1245 (1981), the court held that the claimant's reemployment as a day–to–day substitute rather than as a long–term substitute was not relevant to a determination of the existence of a reasonable assurance of reemployment. Rather, the question was whether he had a reasonable assurance of per-

forming services in an instructional, research, or principal administrative capacity.

█ Both the Commentary and the Pennsylvania cases make clear that in the circumstances of substitutes, "reasonable assurance" is not the same as a guaranty. The critical question is whether the parties in good faith expect the substitute employment relationship to resume. Under certain circumstances, placement on the substitute list does not constitute a "reasonable assurance" of reemployment. Such circumstances exist where it is apparent the school district cannot reasonably expect to offer substitute work to individuals on the list. On the other hand, conditions which affect the number of days a teacher will be called, or the type of assignments or rate of pay given the teacher, do not prevent a district from providing a "reasonable assurance" of continued employment.

The teachers rely on Smith v. Long Beach Unified Schools, P–B–419, cause 80–7002, a decision by the California Unemployment Insurance Appeals Board. There, the Board held a substitute teacher's continued employment was a matter of chance rather than reasonably assured. Thus, the Board allowed benefits. However, Smith did not discuss the Draft Language and Commentary, which our statute cites as a guide to interpreting its provisions. *See* RCW 50.98.110. For this reason, we find Smith to be unpersuasive.

Consequently, we hold the Superior Court erred when it held the Commissioner's decision denying benefits was affected by error of law.[4] We agree with the Commission-

---

[4]In reviewing the judgment of the Superior Court, we are guided by RCW 50.32.120 which provides that judicial review of the Commissioner's decision shall be in accordance with the procedures outlined in RCW 34.04.130 of the Washington State administrative procedure act. That statute states an administrative decision will be reversed if it is

(6) . . .

. . .

(d) affected by other error of law; or

(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or

er's conclusion that a "reasonable assurance" does not require a guaranty of work, but only that the school district in good faith expects to employ the teacher as a substitute in the coming year, and communicates that expectation to the teacher.

 Further, the Superior Court erred when it held the Commissioner's decision was clearly erroneous. "'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed.'" *Ancheta v. Daly,* 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969). The fact this school district has a large number of riffed and unassigned teachers who will compete with the regular substitutes is evidence only that the amount of work may diminish. The record contains persuasive evidence (detailed in the initial portion of this opinion) of the District's good faith expectance to utilize the teachers in a substitute capacity in 1978–79. Under these circumstances, we cannot say we are firmly convinced the Commissioner made a mistake.

The judgment of the Superior Court is reversed.

MUNSON, A.C.J., and GREEN, J., concur.

Reconsideration denied July 20, 1983.

Review denied by Supreme Court November 4, 1983.

---

order; or

(f) arbitrary or capricious.

The foregoing tests apply to the review of administrative decisions by appellate courts as well as by trial courts. *Farm Supply Distribs., Inc. v. State Utils. & Transp. Comm'n,* 83 Wn.2d 446, 448, 518 P.2d 1237 (1974). *See also Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 646 P.2d 113 (1982).