750 P.2d 1370

**Joan GARRISON, Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an Agency, Tucson Unified School District # 1, Appellees.**

**No. 1 CA–UB 534.**

Court of Appeals of Arizona, Division 1, Department B.

Jan. 21, 1988.

Reconsideration Denied March 10, 1988.

Tim Coker, Tucson, for appellant.

Robert K. Corbin, Atty. Gen. by Frank Sagarino, Asst. Atty. Gen., Phoenix, for appellee Arizona Dept. of Economic Sec.

Ruth B. Davis, Tucson, for appellee Tucson Unified School District # 1.

## OPINION

FIDEL, Judge.

A substitute teacher, retained at the end of one school year on her school district's list of substitutes qualified for assignments in the next school year, claims in this appeal that her retention did not constitute a reasonable assurance of employment so as to disqualify her under A.R.S. § 23–750(E)(1) from unemployment benefits during the summer school vacation.

Appellant Joan Garrison held jobs in two fields, became unemployed, and sought unemployment insurance benefits. She filed her application on June 12, 1986, seeking benefits as of June 8th of that year. Her last employer was the Tucson Unified School District; she worked as a substitute teacher during the 1985–86 school year and was laid off from that job on May 31, 1986. Her earlier position was as legal secretary for a Tucson law firm. That job ended in October of 1985.

The school district responded to notice of appellant's claim by stating, "Claimant is not unemployed ... has reasonable assurance of continuing employment for the following school year."

The Arizona Department of Economic Security (DES) determined that appellant was ineligible for benefits "from 6–8–86 through indefinite." By form entitled "Determination of Deputy," claimant was notified:

> Benefits are not payable as you are employed by an educational institution and have a contract or a reasonable assurance of returning to employment with an educational institution during the next academic term or year.

The appellant filed a timely appeal and presented evidence at a hearing before an Appeal Tribunal. The Appeal Tribunal and Appeals Board both affirmed the denial of benefits. This appeal followed.

DES based its determination of ineligibility on A.R.S. § 23–750(E)(1). That statute brings our unemployment security laws into conformity with the Federal Unemployment Tax Act, Pub.L. No. 94–566, 90 Stat. 2667 (1976) (currently codified at 26 U.S.C. § 3304(a)(6)(A)(i)). A.R.S. § 23–750(E)(1) provides:

> E. Benefits are payable on the basis of employment to which this section applies, in the same amount, on the same terms, and subject to the same conditions as benefits payable on the basis of other employment subject to this chapter, except that notwithstanding the provisions of §§ 23–779 and 23–780:
>
> 1. *Benefits* based on service in an instructional, research, or principal admin-

istrative capacity for an educational institution *shall not be paid to an individual for any week of unemployment which begins during the period between two successive academic years,* or during a similar period between two regular terms, whether or not successive, or during a period of paid sabbatical leave provided for in the individual's contract, *if the individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.*

(Emphasis added.)

This statute frames the issue on appeal. Did appellant receive "reasonable assurance" of reemployment?

As context for this issue we first examine the facts in light of another of the employment security statutes, A.R.S. § 23–771(A)(6)(a). That provision establishes a formula for computing financial eligibility for unemployment benefits. To qualify, a claimant's total wages for insured work during a statutorily defined base period must equal one and one half times the claimant's highest quarterly wages within that period.

The "base period" in this case extended from January 1, 1985, to December 31, 1985. *See* A.R.S. § 23–605. Appellant's highest quarterly income for that period was $2034.00 during the third quarter of 1985. One and one-half times $2034.00 equals $3051.00. To qualify for unemployment benefits appellant must have earned at least $3051.00 from insured work during the base period. Appellant earned $3018.00 from insured work as a legal secretary. Standing alone, these earnings fell $33.00 short of the qualifying threshold. Appellant also earned $1058.50 as a substitute teacher with the District. Only by adding her teaching wages to those earned as a secretary could she meet the $3051.00 threshold and qualify for benefits. Inclusion of teaching wages, however, occasioned the application of § 23–750(E)(1) and

raised the issue whether appellant received "reasonable assurance" of continued employment for the 1986–87 school year.

As a preliminary matter, we consider appellant's claim that her qualifying wages were so minimally attributable to teaching that A.R.S. § 23–750 does not apply to her at all. Her secretarial work, she points out, was year-round work, not seasonal. Because it accounted for all but $33.00 of her qualifying income, she describes it as unfair to subject her to a teacher's summer benefit disqualification. Rather, she argues, the application of A.R.S. § 23–750(E)(1) should be restricted to those whose qualifying income is entirely—or, alternatively, primarily—derived from education.

We find no such restriction in the statute. A.R.S. § 23–750(E)(1) speaks of "[b]enefits based on service in an ... educational institution," not of benefits based entirely or primarily on such service. The employment security statute recognizes explicitly in other sections that benefits may be based on service with more than one employer. *See, e.g.,* A.R.S. §§ 23–606 and 638. The qualification propounded by the appellant, if intended by the legislature, would have necessarily been explicit. We interpret § 23–750(E)(1) to apply whenever an applicant's eligibility is derived in whole or in part from service "in an instructional, research, or administrative capacity in an educational institution." If an applicant relies on such service—even, as here, to the minimal extent of $33.00—in order to achieve eligibility under § 23–771(A)(6)(a), that reliance carries with it the baggage of ineligibility under § 23–750(E)(1) during the summer weeks between school years.

Having determined that appellant was subject to A.R.S. § 23–750(E)(1), we turn to the question whether she was reasonably assured employment within the meaning of that statute for the 1986–87 school year.

On April 22, 1986, appellant received a letter from the District Personnel Department. It read in part:

We anticipate continuing you as a SUBSTITUTE TEACHER for the Tucson Unified School District during the 1986–

87 school year, and this will provide you with reasonable assurance of such continued employment.

Appellant responded by filling in the bottom half of the letter, denominated "LETTER OF ASSURANCE FORM," and indicating that she wanted her name "placed on the substitute list for 1986–87." The form was signed, dated, and returned to the District.

DES and the District argue that the letter from the District constitutes "reasonable assurance" as contemplated by A.R.S. § 23–750(E)(1). Appellant argues that the very nature of substitute teaching precludes any reasonable assurance of employment.

Appellant gave the following testimony before the Appeal Tribunal:

Q. Do you feel that by asking that your name be placed on the substitute list that you had a reasonable assurance of continued employment?

A. Well, the way the substitute business works is you have no guarantee at all. You have no guarantee that a teacher will be out of school, you have no guarantee that if a teacher is out that that teacher will be in a subject that you would be qualified to substitute in. You have no assurance that should the first two situations be positive that the substitute office will select your name to be called as they have a list of names that they have on the substitute list and it's entirely at their discretion who they call to come into work. So you have absolutely no guarantee or assurance of anything.

This testimony was unrefuted, and we accept it as an accurate depiction of appellant's employment regimen. The tenuous nature of substitute employment is apparent. The question remains whether our legislature intended to relieve the uncertainty of substitute teaching through the unemployment statutes.

Our unemployment security statute derives its requirement of "reasonable assurance" from the language of the Federal Unemployment Tax Act. 26 U.S.C. § 3304(a)(6)(A)(i), the model for A.R.S. § 23–750(E)(1), precludes compensation to an individual

with respect to services in an instructional, research, or principal administrative capacity for an educational institution ... based on such services for any week commencing during the period between two successive academic years or terms ... if such individual performs such services in the first of such academic years (or terms) and if there is a contract or reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.

The legislative history of the federal act explains that "the term 'reasonable assurance' means a written, verbal, or implied agreement that the employee will perform services in the same capacity during the ensuing academic year or term." 1976 U.S. Code Cong. & Ad.News 5997, 6033, 6036 (conference agreement to Senate amendments).

Although we have found no Arizona cases that construe the "reasonable assurance" requirement in the context of substitute teaching, we have been directed to decisions from other jurisdictions that construe statutes similarly derived from 26 U.S.C. § 3304(a)(6)(A)(i).

The Washington Court of Appeals, in *Jennings v. Employment Security Department*, 34 Wash.App. 592, 663 P.2d 849 (1983), considered the degree of assurance necessary to constitute reasonable assurance of employment as a substitute teacher. It stated:

"[R]easonable assurance" is not the same as a guaranty. The critical question is whether the parties in good faith expect the substitute employment relationship to resume. Under certain circumstances, placement on the substitute list does not constitute a "reasonable assurance" of reemployment. Such circumstances exist where it is apparent the school district cannot reasonably expect to offer substitute work to individuals on the list. On the other hand, conditions

which affect the number of days a teacher will be called, or the type of assignments or rate of pay given the teacher, do not prevent a district from providing a "reasonable assurance" of continued employment.

*Id.* at 598, 663 P.2d at 853.

In *Davis v. District of Columbia Department of Employment Services,* 481 A.2d 128, 131 (D.C.App.1984), the court recognized the "indefinite nature" of substitute teaching employment. However, it reiterated the *Jennings* characterization of the issue as "whether the parties in good faith expect the substitute employment relationship to resume." *Id.* Finding no evidence of bad faith, the court held that a reappointment letter notifying a claimant of "temporary reappointment in the District of Columbia Public Schools as a Social Studies Substitute Teacher" provided reasonable assurance of reemployment. *Id.* at 130.

 We approve the *Jennings* measure of "reasonable assurance" and adopt it as the applicable standard under A.R.S. § 23–750(E)(1). We believe, as did the *Jennings* court, that the kernel of the issue is whether, despite the inherent uncertainties of the substitute-employment relationship, the parties in good faith expect that relationship to continue. Applying this standard to the record before us, we find the decision of the Appeals Board to be reasonably supported by the evidence and, therefore, affirm. *See Kane v. Arizona Department of Economic Security,* 127 Ariz. 143, 618 P.2d 637 (App.1980).

We point out in affirming that it is insignificant to our decision that the school district's reemployment letter to appellant was phrased in terms of "reasonable assurance" tailored to the language of the statute. Such self-serving language does not sway us. The significant question is whether the actual circumstances evidence a reasonable expectation that the substitute employment relationship will continue. In the present case the evidence permitted that conclusion, and we will not preempt the administrative fact-finder's judgment on an issue of fact. *See, e.g., Zavala v.*

*Arizona State Personnel Board,* 157 Ariz. 290, 757 P.2d 94 (1987).

We do note in this case that the appellant was laid off after receiving, signing, and returning her "assurance letter." We can envision circumstances where a present term lay-off would vitiate an employer's assurance of teaching employment for a coming term. The record before us discloses no such circumstances, however, and the burden of presenting such proof was on the claimant. *Employment Security Commission v. Doughty,* 13 Ariz.App. 494, 497, 478 P.2d 109, 112 (1971).

For the foregoing reasons the decision of the Appeals Board is affirmed.

CONTRERAS, P.J., and GREER, J., concur.