Robert V. BRANNUM, Petitioner

v.

DISTRICT OF COLUMBIA PUBLIC
SCHOOLS, Respondent.

No. 05–AA–1143.

District of Columbia Court of Appeals.

Argued Oct. 31, 2006.

Decided April 10, 2008.

Robert V. Brannum, pro se.

Pastell Vann, Senior Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Edward Schwab, Deputy Solicitor General at the time the brief was filed, were on the brief, for respondent.

Before RUIZ and FISHER, Associate Judges, and SCHWELB, Senior Judge.

RUIZ, Associate Judge:

Robert Brannum, a substitute teacher with the D.C. Public Schools ("DCPS"), seeks review of the decision of the Office of Administrative Hearings ("OAH") reversing the determination of the Claims Examiner that found him eligible to receive unemployment compensation benefits. Petitioner argues that the administrative law judge ("ALJ") erred in concluding that he had received "reasonable assurance" of reemployment with DCPS that disqualified him from receiving unemployment compensation benefits.

We conclude that the evidence of record—the mere inclusion of petitioner's name on a master list of available substitute teachers—does not offer substantial support for a finding that petitioner had reasonable assurance of reemployment. Therefore, we reverse and remand the case to OAH with directions to award the unemployment compensation benefits due to petitioner under the law. *See* D.C.Code § 51–107 (2001).

## I.

## FACTS

Petitioner was employed by DCPS as a substitute teacher during the 2004–2005 school year, ending in June 2005. After the 2004–2005 school year ended, petitioner applied to the Department of Employment Services for unemployment compensation benefits. On August 23, 2005, the Claims Examiner issued a Determination finding petitioner eligible for compensation benefits. Specifically, the Claims Examiner held that "[i]t has been determined that the claimant ... was laid off for lack of work from employ[er] and is, accordingly, eligible for unemployment compensation benefits." DCPS appealed the Claims Examiner's Determination finding petitioner eligible to the OAH.

At the hearing before the ALJ, Valerie Sheppard, Director of Staffing and Employment Services at DCPS, testified that to be employed as a substitute teacher, "[t]he individual must have received a substitute [teacher] license from the Office of Academic Credentials[, which] is a two-year license [that] allows them to operate as a substitute teacher within the District of Columbia." Applicants who are li-

censed[1] are included in "a database that list[s] the names and contact information for these individuals that [is] share[d] with the schools." Ms. Sheppard testified that the number of persons in the database differs from year to year "depending on the need," and that, for example, at the height of the 2004–2005 school year "the list was about 450 people at which time we cut it off."[2]

Once a substitute teacher is placed on the list, DCPS, through its Human Resources Division, "talk[s to the teacher] about ... expectations[,]" but as far as securing employment for the substitute, Ms. Sheppard testified, "[W]e don't solicit placements for [teachers]." If a school has a need, "[t]he principal or someone on his or her staff, if they don't already have a copy of the list at the school, would contact [the Division of Human Resources at DCPS]." The Human Resources Division, in turn, provides the school with a list of all the substitute teachers who are currently available, but it is up to the school to "contact those individuals and schedule for someone to come in and serve in the capacity for the teacher that is out for that period." Ms. Sheppard stated that all substitute teachers enter the system in this manner.

Petitioner testified that he had at least one long-term assignment during the 2004–2005 school year. Petitioner and Ms. Sheppard both testified that a "long-term" assignment is defined as being "in ... one classroom[,] ... in one school, [with] ... the same students, ... for 11[or] more days." Although Ms. Sheppard disagreed with the label "long-term," she agreed with petitioner that once a substitute teacher reaches the eleven-day mark, there is a change in pay, "but there is no designation that says that you ... [will] remain with that classroom through the end of the year." The ALJ order, however, referred to petitioner's assignment as "long-term."

Petitioner's name remained on the list after the school term ended in June 2005, but the record is silent as to whether petitioner had reapplied to be on the list at the end of the school year, or whether his name was automatically kept on the list because his two-year license was still valid. See note 1, *supra*. The record is devoid of any indication regarding what, if anything, DCPS communicated to petitioner at the conclusion of the 2004–2005 school year, either with respect to his performance during that school year, or DCPS's expectations with respect to the coming school term.

Based on the evidence presented at the hearing, the ALJ found that petitioner's "presence on the substitute teacher list gives him as much assurance over the summer months as he had during the school term that he would be employed." The ALJ reversed the decision of the Claims Examiner and found appellant ineligible to receive unemployment compensation benefits. Petitioner now seeks review of the OAH decision.

## II.

### ANALYSIS

■■■■ "This court must affirm an OAH decision when ... substantial evidence supports each finding" of fact. *Rodriguez*

---

1. Ms. Sheppard testified that an applicant must also pass a background check and complete a tuberculosis test with a negative result.

2. Ms. Sheppard testified that "[a] person stay[s] on [the list] for approximately two years. That is if they were brought at the beginning of their licensure period. They would be on for two years and, at that point, they would have to renew their license and they could be put back in the list again."

*v. Filene's Basement Inc.*, 905 A.2d 177, 180 (D.C.2006). Petitioner argues that OAH's decision disqualifying him from benefits must be reversed because it is not supported by substantial evidence that DCPS had provided him with a "reasonable assurance" of reemployment so as to render him ineligible for unemployment compensation benefits. We turn to consider the applicable legal standards and the evidence of record in the case.

■ The D.C. unemployment compensation statute covers employees of D.C. institutions of higher education and of other educational organizations, such as DCPS. *See* D.C.Code § 51–101(2)(A)(ii) and (iii) (2001). It provides special rules excepting coverage in limited circumstances, however, due to the nature and length of the school calendar, which incorporates a summer recess during which some school employees, particularly teachers, are not expected to work.[3] Thus, under D.C.Code § 51–109(7)(B) (2001), a school employee is disqualified from receiving unemployment compensation benefits during the school summer recess if two conditions are met: (1) the person has been employed by an educational institution during the prior academic year or term; and (2) the person has been given "reasonable assurance" of reemployment in the following academic year or term.[4] But if the employee does not have "reasonable assurance" of reemployment in the following year, the employee is eligible to receive unemployment compensation benefits, even during the summer months.[5] We have held that "[d]espite the indefinite nature of their employment," substitute teachers are covered by the unemployment compensation scheme for employees of educational institutions, including the provision concerning "reasonable assurance" of continued employment in the new school year. *See*

3. D.C.Code § 51–109(7)(B) provides:

    Benefits based on service in employment ... shall be payable ... except, that with respect to weeks of unemployment ... in an instructional ... capacity for an educational institution, benefits *shall not be paid based on such services for any week of unemployment commencing during the period between 2 successive academic years or terms* ... to any individual *if* such individual performs such services in the first of such academic years or terms and *there is a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.*
    (Emphasis added.)

4. Section 51–109(7)(B) brought the D.C.Code into conformity with the Federal Unemployment Tax Act, Pub.L. No. 94–566, 90 Stat. 2667 (1976) (currently codified at 26 U.S.C. § 3304(a)(6)(A)(i) (2002)). "The purpose of the disqualification statute is to protect ... federal unemployment compensation funds by distinguishing between teachers and school employees who are truly unemployed and those who have advance notice of seasonal layoffs and are not in the same economic situation as those finding themselves unpredictably out of work." *Mogren v. Kan. Employment Sec. Bd. of Review*, 15 Kan.App.2d 12, 801 P.2d 64, 66 (1990). Likewise, before the D.C. Council incorporated the disqualification provisions into the D.C.Code, "The [Unemployment Compensation] Board ... recommended [the] changes [as they are] ... aimed at bolstering the trust fund...." COMMITTEE ON EMPLOYMENT AND ECONOMIC DEVELOPMENT, LEGISLATIVE REPORT FOR BILL 2–209, "DISTRICT OF COLUMBIA UNEMPLOYMENT COMPENSATION ACT AMENDMENTS OF 1978," at 17 (1978). "The section effectively denies unemployment benefits to teachers and other educational personnel during a summer recess." *Davis*, 481 A.2d at 131. "In keeping with the federal act, many states adopted provisions identical or substantially similar to § [51–109]7)(B). We have, therefore, looked to the law of other jurisdictions for guidance in construing our own statute." *Id.* at 131 n. 3.

5. Although the duration of unemployment compensation benefits is not at issue here, we note that a school employee is eligible to receive such benefits for as long as the statute allows. *See D.C.Code § 51–107.*

*Davis v. D.C. Dep't of Employment Servs.,* 481 A.2d 128, 131 (D.C.1984) (per curiam).

■ The goal of the unemployment compensation act is "to protect employees against economic dependency caused by temporary unemployment and to reduce the necessity of relief or other [government-subsidized] welfare programs." *Nelson v. D.C. Dep't of Employment Servs.,* 530 A.2d 1193, 1197 (D.C.1987) (per curiam) (quoting *Von Stauffenberg v. Dist. Unemployment Comp. Bd.,* 148 U.S.App. D.C. 104, 107, 459 F.2d 1128, 1131 (1972)). Therefore, although there is no presumption of compensability in the D.C. unemployment compensation statute as there is in the compensation statute for workers unemployed due to disability, *cf.* D.C.Code § 32–1521(1), we have said that the unemployment compensation statute is to be "liberally construed to accomplish [its] purpose[ ] and extend [its] coverage, with a consequent strict construction of exemption provisions." *Better Bus. Bureau of Wash., D.C. v. Dist. Unemployment Comp. Bd.,* 34 A.2d 614, 616 n. 3 (D.C.1943) (construing exemption from contribution for certain employers and citing cases from Georgia, Maine, Missouri, New Jersey, New York, Virginia and Washington); *see also Rhea v. Designmark Serv., Inc.,* No. 06–AA–1014, 942 A.2d 651, 2008 D.C.App. LEXIS 79, at *11– 12 (D.C. Feb. 21, 2008) (refusing strict application of "procedural technicalities" to *pro se* claimant in light of unemployment compensation statute's remedial character and reliance on enforcement by lay persons). In addition, as the ALJ recognized, DCPS bore the burden of proof to establish the application of "an exception to the requirement[ ] ... of [the] statute...." 1 DCMR § 2820.3 (2001).

The same "strict construction" used for employer exemptions is applicable in determining whether an unemployed claimant is excepted from coverage. This is consistent both with the use of the word "assurance" in the statutory term "reasonable assurance," and the legislative history defining "reasonable assurance" as "a written, verbal, or implied agreement that the employee will perform services in the same capacity during the ensuing school year or term." 1976 U.S. CODE CONG. & ADMIN.NEWS 6033, 6036 (legislative history of federal unemployment tax act, see note 3, *supra*), *quoted in Davis,* 481 A.2d at 131. In the context of substitute teaching, which because of its "indefinite nature" depends on variables such as the needs of the school for substitute teachers in terms of days, grade level and subject matter, we have explained that:

> A reasonable assurance of reemployment is not a guarantee that one will be rehired, *e.g., Richland School District v. Unemployment Compensation Board of Review,* ... [74 Pa.Cmwlth. 413,] 459 A.2d [1358,] ... 1360 [(Pa. Commw.Ct.1983)]; rather, it is a reasonable assurance, "in good faith[, that the parties] expect the substitute employment relationship to resume." *Jennings v. Employment Sec. Dep't,* ... 34 Wash. App. 592, 663 P.2d 849, 853 (1983); *see also Aronson v. Unemployment Compensation Board of Review,* ... 56 Pa. Cmwlth. 177, 424 A.2d 972, 973 ([Pa. Commw.Ct.] 1981) ("absent a formal agreement to rehire, there must be some evidence of mutual commitment or assurance between the teacher and employer to recall the former"). More than a mere hope of reemployment is required. *Id.*

*Davis,* 481 A.2d at 131.

In *Davis,* we held that a DCPS reappointment letter received in July by a substitute teacher who had been employed during the school year ending in June constituted "reasonable assurance" that

she would be reemployed as a substitute teacher during the coming school term. *See Davis*, 481 A.2d at 131. The DCPS letter read in part:

This is to officially notify you of your temporary reappointment in the District of Columbia Public Schools as a Social Studies Teacher, effective July 1, 1983. Attached is a copy of your personnel action, providing the details of your reappointment.

*Id.* at 130. We held that, as of the date received, the reappointment letter provided the substitute teacher with "reasonable assurance" of employment in the next school year, so that no unemployment compensation benefits were payable during the summer recess. *See Davis*, 481 A.2d at 131. In *Dowdy v. District of Columbia Dep't of Employment Servs.*, 515 A.2d 399 (D.C.1986), we similarly held that a baker employed by American University was disqualified from receiving unemployment compensation benefits during the summer months because she had received "reasonable assurance" of reemployment: "a lay-off notice [for the summer] which included a promise of reemployment . . . around the start of the next academic year." *Id.* at 399.

■ "Whether reasonable assurance has been afforded by the employer is essentially a question of fact to be determined by examining the relevant circumstances surrounding the employment relationship." *Davis*, 481 A.2d at 131. Here, petitioner did not receive any type of reappointment letter from DCPS, as in *Davis*, nor a "promise of reemployment" as in *Dowdy.* Instead, the OAH found "reasonable assurance" based on the fact that petitioner's name was included in a list of substitute teachers for the 2005–2006 school year.

The OAH, however, had no basis to assess whether there was a reasonable likelihood that petitioner would be reemployed because there was no evidence presented as to whether the manner in which the list was composed or how it operated in practice related to petitioner's individual situation. There is no evidence, for example, of whether teachers placed on the list are selected based on a preliminary matching of their qualifications with anticipated needs, and the record is silent, in any event, as to the subject matter or grade level petitioner was qualified to teach. Even more generally, there is no evidence on how many teachers are called every year on average; what the chances are for somebody with petitioner's qualifications to be called on; or whether some teachers have priority over other teachers based on seniority or prior experience with DCPS. *Cf. Preziosi v. Dep't of Employment Sec. Bd. of Review*, 529 A.2d 133, 137 (R.I.1987) ("[F]actors relevant to the determination of reasonable assurance may include seniority, number of days taught during the previous year, and priority placement on the substitute list as determined by the agreement or by seniority preferences."). Moreover, the record is silent as to whether petitioner was notified that his name was on the list, whether the list was publicly available so that petitioner could ascertain his status, or whether it was an internal compilation for DCPS' operational purposes only. *Cf. Preziosi*, 529 A.2d at 137 (evidence insufficient to find reasonable assurance when a notice sent to the substitute teacher by the school made "[n]o mention . . . of the possibility of substitute teaching in the upcoming school year[ nor did it] inform[ ] that [the substitute teacher's] name would be included on a substitute list. . . .").

Ms. Sheppard's testimony that the substitute teacher list contained "about 450" names, that a teacher would be called by a school based on need, and that DCPS did not solicit placement for the teachers,

without more, says nothing about petitioner's chances of being called to teach as a substitute, and is readily distinguished from the evidence presented in *Davis,* where the substitute teacher was "officially" notified with a letter of her reappointment as a "Social Studies Teacher" for the ensuing school year.[6] 481 A.2d at 130. The letter included the "details" of the teacher's reappointment, and enclosed a "copy of [her] personnel action"—which evidenced that a personalized determination had been made. *Id.*; *see Dowdy,* 515 A.2d at 399, 401 (holding that a letter to school employee containing "a promise of reemployment ... around the start of the next academic year" constituted "reasonable assurance of continued employment from the outset of the succeeding academic year." (citing *Davis,* 481 A.2d at 131)). Here, the ALJ was presented with no "details" specific to petitioner's status with respect to the coming school year other than the fact that petitioner's name continued to appear on what is in essence a "standby" list. And unlike the letters in *Davis* and *Dowdy,* there is no evidence of any type of personalized communication or assessment that could have assured petitioner that he would be reemployed as a substitute teacher for the next academic year. We therefore cannot conclude that DCPS and petitioner reached an "implied agreement that the employee will perform services in the same capacity during the ensuing school year or term." 1976 U.S. CODE CONG. & AD.NEWS 6033, 6036 (legislative history of federal act), *quoted in Davis,* 481 A.2d at 131.

The legislative history of D.C. Law 2–129, the legislation that enacted the disqualification provision for payment during the summer recess, indicates that "reasonable assurance" contemplates that "the claimant has been given *notification* with respect to his or her employment status. If such claimant has been *notified* that he or she has ... reasonable assurance of, reemployment for the ensuing academic year or term, then the claimant may not be entitled to unemployment benefits." U.S. DEPARTMENT OF LABOR, DRAFT LANGUAGE AND COMMENTARY TO IMPLEMENT THE UNEMPLOYMENT COMPENSATION AMENDMENTS OF 1976– P.L. 94–566, at 54 (emphasis added), *attached to* COMMITTEE ON EMPLOYMENT AND ECONOMIC DEVELOPMENT, LEGISLATIVE REPORT FOR BILL 2–209, "DISTRICT OF COLUMBIA UNEMPLOYMENT COMPENSATION ACT AMENDMENTS OF 1978," (1978); *see Davis,* 481 A.2d at 132 n. 5 (concluding that employee had reasonable assurance of reemployment as of date of receipt of reappointment letter).

We are not persuaded by the ALJ's misplaced reliance on *Garrison v. Ariz. Dep't of Econ. Sec.,* 156 Ariz. 167, 750 P.2d 1370 (1988), a case in which unemployment compensation benefits were denied after a person was listed on a substitute teacher list. In *Garrison,* prior to being placed on the list, the substitute teacher had received a letter from the school system informing her that it "*anticipate[d] continuing* [her] as a SUBSTITUTE TEACHER for the [upcoming] ... school year...." *Id.* at 1372–73 (emphasis added). The substitute teacher then "responded by filling in the bottom half of the letter, denominated 'LETTER OF ASSURANCE FORM,' and indicat[ed] that she wanted her name 'placed on the substitute list for [the upcoming school year].'" *Id.* at 1373. Finally, "the form was signed,

---

**6.** Although Ms. Sheppard testified that the DCPS Human Resources Division "talk[s to the teacher] about ... expectations," her explanation served to dampen expectations as it was made clear to teachers on the list that the Human Resources Division does not solicit placement for teachers, but leaves it to individual schools to contact substitute teachers on the list.

dated, and returned to the District." *Id.* Based on these facts, the Arizona Court of Appeals held that there was evidence that "the parties in good faith expect[ed] [the employment] relationship to continue." *Id.* at 1374. There was no similar exchange between DCPS and petitioner, however, which makes *Garrison* inapt. *See Aronson,* 424 A.2d at 973 (no reasonable assurance unless teacher has received information on which to base expectation).

Similarly, courts of other jurisdictions which have considered placement of a substitute teacher on a list have not done so in a vacuum, but have looked to other evidence to infer that placement on the list was, in fact, "reasonable assurance" of reemployment. *See Denver Pub. Schs. v. Indus. Comm'n of Colo.,* 644 P.2d 83, 84–85 (Colo.App.1982) (finding sufficient evidence of reasonable assurance where "there was a mutual understanding that, in the event [the teacher] did not obtain a contract as a full-time teacher, she would be available to substitute, and she was *verbally assured that she would remain on the active substitute list and could return in the fall* . . . . Also, she received from [the school system] a *reasonable assurance form* which indicated that her name would be on the substitute teacher list for the fall term." (emphasis added)); *August v. Dir. of the Div. of Employment Sec.,* 386 Mass. 826, 438 N.E.2d 327, 329 (1982) ("In light of the past practice of the school department in rehiring *all* incumbent aides, coupled with information obtained at group meetings prior to the end of June, . . . the claimants had assurance of reemployment ample enough to trigger the disqualifying provisions . . . ." (emphasis added)); *Thomas v. Miss. Employment Sec. Comm'n,* 910 So.2d 1220, 1221 (Miss.Ct. App.2005) ("[The substitute teacher] was informed that he *very likely* would be contacted for future substitute teaching needs of the school." (emphasis added)); *In re*

*Luchun,* 186 A.D.2d 848, 588 N.Y.S.2d 217, 217 (1992) ("Evidence was presented at the hearing that claimant was mailed a letter . . . assuring him that the need for substitutes in the upcoming year was *as great as it had been the previous year.*" (emphasis added)); *In re Miller,* 78 A.D.2d 561, 431 N.Y.S.2d 725, 726 (1980) (employee notified that "employment opportunities would exist in the coming year, *as they had* in the [previous] school year" (emphasis added)); *Goralski v. Pa. Unemployment Comp. Bd. of Review,* 48 Pa.Cmwlth. 39, 408 A.2d 1178, 1180 (1979) ("[Substitute teacher's] *past employment record and the past employment policies* of the districts indicate that she has, in fact, been selected for teaching assignments from the respective lists in past years." (emphasis added)); *Jennings,* 663 P.2d at 853 (holding that communicating expectation of reemployment to substitute teacher was a factor in determining that placement on list constituted "reasonable assurance" of reemployment).

Here, there were no such additional facts from which to infer that placement on the substitute teacher list constituted a reasonable assurance of reemployment. Although petitioner had been called to serve as a substitute teacher the previous year, there is no evidence that his experience during that year could have formed a basis for "reasonable assurance" of similar employment the following year. The record is silent as to how many days he worked during the year and whether petitioner had taught as a substitute for only that year or had a long history of doing so (which, absent some unanticipated change, could have provided a basis for assurance of continued work); nor is there evidence of the performance evaluations he received, which also could have informed his expectation of future reemployment. And, as already noted, DCPS presented no evi-

dence on how the substitute teacher list was composed or used in practice, or on the probability (based on past experience) that a substitute teacher on the list would be recalled to teach, that would have permitted the ALJ to find—assuming that petitioner had been made aware of these facts—that reemployment was reasonably assured for the following year.

Because DCPS did not meet its burden of proof to establish an exception under the unemployment compensation statute by presenting substantial evidence that petitioner had—more than a mere hope—a "reasonable assurance" of reemployment, we reverse the denial of unemployment compensation benefits and remand the case to OAH with instructions to award unemployment compensation benefits to petitioner in the amount and for the duration provided by law.

*Reversed and remanded.*