*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-AA-901

MICHAEL CAISON, PETITIONER,

v.

PROJECT SUPPORT SERVICES, INC., *et al.*, RESPONDENTS.

On Petition for Review from the
Office of Administrative Hearings
(DOES-744-12)

(Argued November 14, 2013                    Decided September 11, 2014)

Michael Caison, *pro se*.

*Laura Golden Liff* and *Adam W. Smith*, for respondent, Project Support Services, Inc. *Christopher M. Leins* was on the brief.

*Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General, filed a statement in lieu of brief, for respondent, the District of Columbia Department of Employment Services.

Before GLICKMAN and MCLEESE, *Associate Judges*, and REID, *Senior Judge*.

REID, *Senior Judge*:  Petitioner, Michael Caison, filed a claim for unemployment compensation after he was terminated from employment by respondent, Project Support Services, Inc. ("PSS" or "PSS, Inc."). His claim was denied by the District of Columbia Department of Employment Services

("DOES") on the ground that he was an independent contractor and not an employee of PSS. He filed an appeal with the District of Columbia Office of Administrative Hearings ("OAH"). In this court, he challenges the decision of an OAH Administrative Law Judge ("ALJ") that affirmed the claims examiner's determination. For the reasons stated below we vacate OAH's decision and remand this case to OAH for further proceedings consistent with instructions that appear at the end of this opinion.

## FACTUAL SUMMARY

The record establishes that PSS recruits and provides persons to federal agencies who perform a range of services, including engineering, administrative, contract, and realty services. Some of these individuals are designated by PSS as employees and others are designated as independent contractors.[1]

At the outset of the evidentiary hearing conducted on May 23, 2012, the ALJ

---

[1] PSS would occasionally get contracts from other firms that were "not doing that well[] as far as managing the contract." Workers under these contracts retained their previous status (employee or independent contractor) after PSS took over the work. Those that were new to the contract could "express [a] preference" as to whether they wanted to be considered employees or independent contractors.

announced that the only issue was whether Mr. Caison was an independent contractor. The ALJ further stated that "[b]ecause the burden of proof is on you, Mr. Caison, you will put your testimony on first" and PSS "will have an opportunity for cross-examination."

Mr. Caison testified that PSS hired him on February 4, 2002, after he submitted "an application, resume, [and] cover letter." He was placed with the federal General Services Administration ("GSA") as a realty specialist "under contract to [PSS]." Mr. Caison started as "a W-2 employee, but became . . . an employee with limited benefits," and he was paid at an hourly rate. In early 2006, Lou Hammond, PSS's President, asked him to "consider becoming an independent contractor." That year, he received a W-2 tax form and a 1099 tax form. Thereafter PSS provided him with a 1099 form for tax purposes. After this modification, Mr. Caison stated that his interactions with PSS and GSA did not change, PSS continued to refer to him as an employee, and some real-estate specialists were designated employees while others were designated independent contractors. Mr. Caison maintained that he had been misclassified, and that under the common law, he should have been classified as a PSS employee, because his supervisor was Tony Sterling, the PSS official who terminated Mr. Caison's

employment. In addition, Mr. Caison was required "to work core government hours," that is, 9:00 a.m. to 5:00 p.m., and for nine and one-half years he sat at the same desk and performed the same type of service. Mr. Sterling was not at GSA on a daily basis, and did not assign Mr. Caison to GSA work projects.

Troy Hammond, PSS's Executive Vice President, represented PSS at the compensation hearing. He testified that he was not with PSS in 2002, that he was not familiar with Mr. Caison's status when PSS hired him,[2] and that his parents and another person established PSS. Mr. Caison asked to become an independent contractor in 2006, but Mr. Caison received both a W-2 and a 1099 tax form in 2006. Mr. Hammond explained that the W-2 form concerned Mr. Caison's employment with PSS Associates, LLC, a separate Virginia corporation, and the 1099 form covered Mr. Caison's time with PSS, Inc., a Maryland corporation.[3] Mr. Hammond acknowledged that some real-estate specialists may be designated as employees and most of PSS's employees are placed at government agencies.

---

[2]  There are no documents in the record containing details about Mr. Hammond's employment between 2002 and part of 2006.

[3]  The Hammonds created other separate corporations, including FSS Associates, a Florida corporation, Texas Support Services, a Texas corporation, and ADQ Services, a Maryland corporation.

The documentary evidence, presented and discussed at the hearing by Mr. Caison and Mr. Hammond, revealed that for the 2006 tax year, Mr. Caison filed a 1099 tax form declaring "Nonemployee compensation" of a specified amount. On October 23, 2006, he completed a PSS certification of business form, indicating his status as a "small business." Mr. Caison executed a professional services agreement with PSS on October 1, 2007, in which he identified himself as a "sole proprietor" and "subcontractor." Under the agreement he was required to provide services as a project manager to GSA, at an hourly rate of $73.17, and he had to submit an invoice on a monthly basis for payment.[4] Section 3 of the agreement stated "Subcontractor Warranties," and Mr. Caison warranted that he had an independent contractor relationship with PSS, that he "is a separate, independent licensed business entity," and that the agreement could not be construed as creating an employer/employee relationship. Mr. Caison filed 1099 tax forms, related to his

[4] Other provisions of the agreement included: § 3.2 (4) limiting PSS's "right or authority to control or restrict . . . or limit" Mr. Caison's work or activities; § 3.3 providing, in part, that Mr. Caison "makes [his] professional services generally available to a wide variety of companies on a regular basis" (this was not the case as PSS essentially admitted); and § 6.3 in which Mr. Caison essentially agreed to not compete with PSS during the agreement and for one year after the termination of the agreement (Mr. Caison maintains that this provision demonstrates the importance of his activities to PSS).

"Nonemployee compensation" work at GSA and his subcontractor status with PSS, covering the period from 2007 through the ending date of his employment in 2011.

On June 27, 2011, Mr. Troy Hammond sent an email to Mr. Sterling advising him about a PSS contract modification requiring the elimination of three PSS positions due to a reduction in GSA's workload. The related GSA email, dated June 22, 2011, stated that PSS could decide which positions would be eliminated, but that there were "some [c]ontractors whose service has been deemed exceptional by their [s]upervisors" and "[h]opefully this factor will be considered" by PSS.[5] Mr. Sterling informed Mr. Caison on June 30, 2011, that his position would be eliminated and that he would have to leave at the end of the day and return his government identification.[6]

---

[5] Mr. Hammond explained during the unemployment compensation hearing that he and Mr. Sterling asked GSA "who's doing excellent work," and GSA replied with names. Mr. Caison's name was not included in that list. Furthermore, when PSS looked at the billing rates for Mr. Caison and the two other persons whose names were not included in GSA's communication, they realized that the cost for these individuals came to the exact amount of GSA's modification of PSS's contract.

[6] Subsequently, Mr. Caison sent a letter to Mr. Lou Hammond on August 12, 2011, claiming breach of contract due to PSS's failure to provide him with the thirty-day notice required under § 8 of his professional services agreement with PSS. He demanded approximately $12,000, the amount he would have received if

(continued…)

Mr. Caison submitted a claim for unemployment compensation with DOES on March 26, 2011.[7] DOES denied his claim on April 20, 2012, on the ground that Mr. Caison was "employed as an independent contractor employee," and that "[w]ork performed as an independent contractor employee is not covered employment and is exempt from the payment of the Unemployment Insurance Tax" under the District of Columbia Code. Mr. Caison requested a hearing before OAH, arguing that under the common law, he was PSS's employee. Following that hearing the ALJ issued a final order affirming DOES's determination, on May 29, 2012. She declared, in part, that: "The burden is on the claimant to demonstrate that he meets unemployment eligibility requirements, both as an initial matter and in subsequent appeals." After reviewing applicable statutory provisions and case law, the ALJ identified the factors this court has relied on to determine

---

(…continued)

he had been given proper notice. When PSS did not honor his demand, Mr. Caison filed a complaint against PSS in the Fairfax County (Virginia) Circuit Court. PSS and Mr. Caison settled the lawsuit, and they filed the "Settlement Agreement and Mutual Release, dated March 1, 2012," under seal.

[7] Mr. Caison sought unemployment benefits from the Virginia Employment Commission ("VEC"). VEC found him ineligible for benefits because of a "lack of wage contributions," and VEC referred the claim to DOES because Mr. Caison's place of employment was the District.

whether an individual is an employee under the common law. The ALJ emphasized the "control" factor and concluded that Mr. Caison was not an employee under the common law; rather, he was an independent contractor.

## ANALYSIS

Mr. Caison contends that the ALJ failed to make findings of fact on each of the factors this court has articulated for determining whether an individual is a common law employee, and that some of the findings, in particular those concerning the control factor, are not based on substantial evidence. He also argues that the ALJ committed procedural errors, including shifting the burden of proof to him regarding whether he was an independent contractor, and failing to apply the presumption of compensability. PSS supports the ALJ's final order and maintains, in essence, that the ALJ properly applied the factors articulated by this court to determine whether an individual is an employee or an independent contractor under the common law.[8]

---

[8] In a footnote, PSS addresses Mr. Caison's burden of proof argument by asserting "that the burden rests with Mr. Caison to prove he was an employee and thus entitled to unemployment benefits."

We are guided by the following standard of review, statutory and regulatory provisions, and applicable legal principles. This court will affirm an OAH decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Savage-Bey v. La Petite Acad.*, 50 A.3d 1055, 1060 (D.C. 2012) (internal quotation marks and citations omitted). We review an OAH decision to determine whether "(1) OAH made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) OAH's conclusions flow rationally from its findings of fact." *Rodriguez v. Filene's Basement Inc.*, 905 A.2d 177, 180 (D.C. 2006). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gardner v. District of Columbia Dep't of Emp't Servs.*, 736 A.2d 1012, 1015 (D.C. 1999) (internal quotation marks and citations omitted).

"The goal of the [District of Columbia's] unemployment compensation act is to protect employees against economic dependency caused by temporary unemployment and to reduce the necessity of relief or other [government subsidized] welfare programs." *Brannum v. District of Columbia Pub. Sch.*, 946 A.2d 962, 966 (D.C. 2008) (internal quotation marks omitted) (citing *Nelson v.*

*District of Columbia Dep't of Emp't Servs.*, 530 A.2d 1193, 1197 (D.C. 1987) (per curiam)). "The statute is remedial humanitarian legislation of vast import, and its provisions must be liberally and broadly construed." *Hamilton v. Hojeij Branded Food, Inc.*, 41 A.3d 464, 474 (D.C. 2012). Employers are required to make a contribution to the District's Unemployment Fund based on wages paid with respect to employment.[9] D.C. Code §§ 51-102, -103 (b) (2012 Repl.); 7 DCMR § 318.1 (2012). "Employment" means "service performed . . . by . . . [a]ny individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an employee." D.C. Code § 51-101 (2)(A)(i)(II).[10] However, "[w]hen the relationship of a worker to a company is that of an independent contractor rather than that of an employee as defined by the

---

[9] "'Wages' means all remuneration for personal services, including commissions and bonuses . . . ." D.C. Code § 51-101 (3) (2012 Repl.).

[10] "All services in employment shall be presumed to be covered [with respect to contributions to the District Unemployment Fund by the employer] unless specifically excluded by . . . the Act." 7 DCMR § 318.2. But, "there is no presumption of compensability [with regard to claimants] in the D.C. Unemployment Compensation Statute"; nevertheless, we must construe the act "liberally . . . to accomplish [its] purpose[] and extend [its] coverage, with a consequent strict construction of exemption provisions." *Brannum*, *supra*, 946 A.2d at 966 (last four alterations in original) (citations omitted). "The same 'strict construction' used for employer exemptions is applicable in determining whether an unemployed claimant is excepted from coverage." *Id.*

common law, that worker is not entitled to benefits under the District of Columbia Unemployment Compensation Act[.]" *RosExpress, Inc. v. District of Columbia Dep't of Emp't Servs.*, 602 A.2d 659, 661 (D.C. 1992) (citing *Spackman v. District of Columbia Dep't of Emp't Servs.*, 590 A.2d 515 (D.C. 1991)).

While "the proponent of an order shall have the burden of proof" or the burden of persuasion, 1 DCMR § 2822.1 (2011), "the burden of proof to establish the application of an exception to the requirement . . . of [the] statute" is on the employer. *Brannum*, *supra*, 946 A.2d at 966 (alterations in original) (citing 1 DCMR § 2820.3 (2001)). Specifically under the current rule, "[t]he party asserting an exception to the requirements or prohibitions of any statute or rule shall have the burden of producing sufficient evidence to establish the exception." 1 DCMR § 2822.2 (d).

"The determination of whether an employer-employee relationship exists involves a mixed question of law and fact." *Hickey v. Bomers*, 28 A.3d 1119, 1123 (D.C. 2011) (internal quotation marks and citations omitted). "We review mixed questions of law and fact under our usual deferential standard of review for factual findings (applying either the clearly erroneous or substantial evidence standard of

review) and [apply] *de novo* review to the ultimate legal conclusions based on those facts." *Id.* (alteration in original) (internal quotation marks and citations omitted). We consider the following factors in determining whether an individual is an employee under the common law: "(1) the selection and engagement of the individual hired, (2) the payment of wages, (3) the power of the one who hires over the other whom he has hired, and (4) whether the service performed by the person hired is a part of the regular business of the one who hired." *Id.* (quoting *Spackman*, *supra*, 590 A.2d at 516). "While no single factor is controlling, the decisive test is whether the employer has the *right to control and direct the servant in the performance of his work and the manner in which the work is to be done.*" *Id.* (citations omitted). "In analyzing an employer's right to control, we look to the . . . relationship between the parties and the language of [the] agreement between them, if any." *Id.* (citation omitted).

We address the burden of proof issue at the outset of our analysis. The ALJ clearly stated at the beginning of Mr. Caison's unemployment compensation hearing, that the only issue before her at the hearing was whether or not Mr. Caison was an independent contractor. Mr. Caison agreed but stated, "I also have an argument I would like to make, that I believe . . . per D.C. Code, that I would be

eligible as well." The ALJ rejected his assertion that he should be allowed to show his eligibility to receive benefits as an employee; the ALJ declared: "Well, the only issue before me today is whether or not you [Mr. Caison] are an independent contractor." She acknowledged that "[t]here are other issues that go to whether you [Mr. Caison] are actually eligible for benefits." Nevertheless, the ALJ insisted that "since DOES has only issued a determination on the issue of whether you're [Mr. Caison is] an independent contractor, that is the only issue that I will reach today."[11] If the ALJ determined that Mr. Caison was not an independent contractor, then his case would have to be returned to DOES to complete the process of determining whether he is eligible for unemployment benefits. PSS's position is that Mr. Caison is an independent contractor, and hence, it was not required to make contributions for him to the District's Unemployment Fund. Mr. Caison's response is that he is an employee of PSS, and hence, that he is eligible for unemployment compensation benefits; and further, the burden of production is on PSS to establish that he is an independent contractor.

The ALJ made no reference to OAH's burden of proof regulations that were

---

[11] In her Final Order, the ALJ identified the ultimate issue as: "Is [Mr. Caison] an employee eligible to receive unemployment benefits?" However, that is not the issue about which the ALJ heard testimony at the May 23, 2012, hearing.

in effect at the time of the hearing; nor did the ALJ recognize this court's longstanding legal principle that we construe the unemployment compensation act "liberally . . . to accomplish [its] purpose[] and extend [its] coverage, with a consequent strict construction of exemption provisions." *Brannum*, *supra*, 946 A.2d at 966 (last three alterations in original) (citation omitted). Therefore, while the ALJ correctly stated in her Final Order that "[t]he burden is on the claimant to demonstrate that he meets unemployment eligibility requirements"[12] and this statement is consistent with 1 DCMR § 2822.1,[13] the ALJ did not consider the principle followed in a number of jurisdictions, that a presumption arises that a claimant is an employee if the claimant proves that he or she received

---

[12] We said in *Green v. District of Columbia Dep't of Emp't Servs.*, 499 A.2d 870, 876 (D.C. 1985), "[t]o be eligible for benefits . . . , a claimant must demonstrate, *inter alia*, that he has made a claim for benefits pursuant to applicable regulations, that he has been paid the requisite wages for employment, that he is physically able to work, and that he is available to work." Although the broad language in *Green* indicates that a claimant has the burden of showing "wages for employment" to establish eligibility for benefits, that language was not directed at the issue presently before us—whether a claimant who has shown receipt of payment for services bears the burden of establishing that he is an employee rather than an independent contractor—and therefore does not foreclose our holding.

[13] The regulation specifies in full that, "Unless otherwise established by law, the proponent of an order shall have the burden of proof, that is, the requirement to persuade the Administrative Law Judge on every contested factual issue." 1 DCMR § 2822.1.

compensation for providing services. *See, e.g.*, *Burkhardt v. State*, 53 N.W.2d 394, 422 (N.D. 1952) ("The fact that one performs personal services for another, for an agreed compensation, carries with it the presumption of the right of control and discharge by the employer . . . ." (internal quotation marks omitted) (quoting *Gibson v. Gillette Motor Transp., Inc.*, 138 S.W.2d 293, 294 (Tex. Civ. App. 1940))); *Liberty Mut. Ins. Co. v. Boggs*, 66 S.W.2d 787, 793-94 (Tex. Civ. App. 1933) (citing a string of cases in which the burden shifted to the party arguing that an individual was an independent contractor instead of an employee).[14]

---

[14] Other jurisdictions recognize a statutory presumption favoring an employee, and they place the burden of proof on the employer to prove otherwise. *See Quality Care Options v. Unemployment Comp. Rev. Bd.*, 57 A.3d 655, 660 (Pa. 2012) ("[T]he [l]aw creates a presumption that an individual working for wages is an employee."); *Yard Bird, Inc. v. Virginia Emp't Comm'n*, 503 S.E.2d 246, 249-50 (Va. 1988) ("[I]n borderline cases, 'employment' should be found to exist . . . . As defined in the Act, the term 'employment' should be accorded a broader and more inclusive meaning than in the common-law context of master and servant. . . . [Once satisfying] the initial burden of proving that the services are performed by individuals for remuneration . . . , the burden shifts to the putative employer . . . that it qualifies for an exemption . . . ."); *Sky King 101, LLC v. Thurmond*, 724 S.E.2d 412, 413 (Ga. Ct. App. 2012) (noting that Georgia's statutory code "provides that services performed by an individual for wages shall be deemed to be employment unless" the employer proves otherwise); *E.P.M. v. Buckman*, 300 S.W.3d 510, 513 (Mo. Ct. App. 2009) ("Where a worker has received remuneration from an employer, there is a presumption of an employer-employee relationship, and to the extent it challenges that presumption, the burden of proof rests with the employer to show, under the common-law right to control test, that the worker is an independent contractor); *Mississippi Dept. of Emp't Sec. v. Harbin*, 11 So.3d 137, 139 (Miss. Ct. App. 2009) ("Services performed by an

(continued…)

In light of this principle, as well as the principle that the unemployment compensation statute should be liberally and broadly construed, we hold that if the claimant shows that he or she has been paid for providing services, the alleged employer bears the burden (both of production and persuasion) to prove that the claimant was an independent contractor rather than an employee. On remand, OAH should reconsider the *Spackman* factors in light of the proper burden of proof.

We take this opportunity to provide some guidance for the remand consideration of the *Spackman* factors, in light of the ALJ's discussion in her Final Order. The first *Spackman* factor is "the selection and engagement of the individual hired." *Spackman*, *supra*, 590 A.2d at 516. The appeals examiner in the

---

 (…continued)
individual for wages shall be deemed to be employment subject to this chapter unless and until it is shown . . . that such individual has been and will continue to be free from control and direction over the performance of such services both under his contract of service and in fact . . . ."); *Bauder v. Employment Appeal Bd.*, No. 070927, 2008 WL509248, at *2 (Iowa Ct. App. Feb. 27, 2008) ("Services performed by an individual for wages shall be deemed to be employment subject to" the Iowa Code.").

*Spackman* case made findings on the first factor by looking at the contract under which petitioner was hired to perform a role in an opera presented by Washington Opera; the examiner found that Washington Opera did not treat petitioner as an employee and the contract "did not state that he was an employee of Washington Opera." *Id*. at 517. In this case, Mr. Hammond testified that he was not with PSS in 2002 when Mr. Caison was hired and was not familiar with his status at that time. PSS presented no evidence as to Mr. Caison's status beginning in 2002. Mr. Caison stated that he was hired after he submitted an application, resume and cover letter, and he was placed with GSA "under contract to [PSS]." He presented a W-2 form for part of the year 2006, before he signed an independent contractor agreement. The W-2 form showed that PSS paid Mr. Caison "wages" from which federal income taxes were withheld, and other deductions were made. Nevertheless, the ALJ found that "there are no factors that support [Mr. Caison] being an employee," that "[i]t is not clear how [Mr. Caison] was selected," and that "Mr. Hammond was not with the company in 2002 when [Mr. Caison] was hired on the GSA contract." Having made no finding with respect to Mr. Caison's testimony about the manner in which he was hired, the ALJ apparently ignored Mr. Caison's employment with PSS for the years 2002 through 2005 and part of 2006, and essentially began her analysis with the filing of Form 1099, covering part of

the year 2006.[15]  It is not clear whether the ALJ counted the lack of details and documentation about PSS's hiring of Mr. Caison in 2002 and his work between 2002 and early 2006 against Mr. Caison because of her belief that he had the burden of production and persuasion on the independent contractor issue and the *Spackman* factors.  Nor is it clear as to whether the ALJ's conclusions about the early period of Mr. Caison's employment affected her analysis of the other *Spackman* factors.

The ALJ's focus on the 1099 forms and the payment of Mr. Caison on an hourly basis, with no benefits, appears to be directed at the second *Spackman* factor, "payment of wages."  *Spackman*, *supra*, 590 A.2d at 516.  The ALJ says, in a cursory manner, that Mr. Caison's "payment of wages at an hourly rate with no benefits and the receipt of a 1099 form, weigh in favor of [his] being an independent contractor."  She also asserts that Mr. Caison "did not produce any of his tax returns," but "he acknowledged filing taxes as a sole proprietor," in essence as "a business owner."  She further criticized Mr. Caison for "tr[ying] to downplay his knowledge of being an independent contractor," and "found his testimony in

---

[15]  In doing so, the indication that PSS treated Mr. Caison identically before and after the 2006 change from employee to independent contractor was not mentioned.

this regard less than genuine." She rejected Mr. Caison's attempt to use documents in which PSS referred to him as an employee, maintaining that PSS's "use of the word 'employee,' when addressing both employees and subcontractors, had no bearing on the actual relationship between [Mr. Caison] and [PSS]."

The ALJ does not consider the meaning of "wages" (as defined by D.C. Code § 51-101 (3)) in the context of evidence presented in this case. Nor is it clear whether the ALJ accepted PSS's explanation for the 2006 W-2 form – that the form pertained to Mr. Caison's employment with PSS Associates, LLC, a separate Virginia corporation, and the 2006 1099 form covered Mr. Caison's time with PSS, Inc., a Maryland corporation.[16] Significantly, we recognized in *Hickey*, that the issuance of a 1099 form and the fact that the employer did not withhold taxes "argued in favor of finding [that an individual] was an independent contractor," but we also said that "use of a 1099 tax form does not [necessarily] undermine the conclusion that a worker is an employee and not an independent contractor." 28 A.3d at 1124-25 (second alteration in original). Moreover, we declared that

---

[16] We note that the 2006 W-2 form from PSS Associates LLC and the 2006, 1099 forms for PSS, Inc. bear the exact same address and suite number in Ashburn, Virginia; Mr. Caison's 1099 forms for 2007 through his termination in 2011 also show PSS, Inc. with an office in Ashburn, Virginia, but a different street address.

payment of petitioner at "an hourly rate based on the hours she worked weighs at least slightly on the side of her having been an employee rather than an independent contractor."  *Id*. at 1125 (referencing *Spackman*, *supra*, 590 A.2d at 517).  The ALJ did not cite and may not have been aware of *Hickey*.

As for the third *Spackman* factor, "the power of the one who hires over the other whom he has hired" (commonly referred to as the control factor), *Spackman*, *supra*, 590 A.2d at 516, the ALJ concluded that "[t]he evidence supports that [PSS] played no role whatsoever in [Mr. Caison's] performance," that "Mr. Hammond was unfamiliar with exactly what type of work [Mr. Caison] performed for GSA because [PSS] ha[d] so little involvement in his role," that Mr. Caison "did not have to obtain [PSS's] permission to take leave from GSA and the timesheets provided to [PSS] were those required of every government employee, contractor, or subcontractor to permit [PSS] to invoice the government for contract services."

The record does not provide a detailed picture of Mr. Caison's work with GSA – such as who directed the performance of his work, and the manner in which his work was done.  *See Hickey*, *supra*, 28 A.3d at 1123.  The ALJ emphasized that Mr. Hammond "was unfamiliar with exactly what type of work [Mr. Caison]

performed for GSA because Employer has so little involvement in his role." But, the ALJ does not examine other potentially relevant facts such as PSS's broad power to terminate those whom it hired, Mr. Sterling's role as Mr. Caison's supervisor, the fact that Mr. Sterling terminated Mr. Caison after asking GSA about the realty specialists that PSS provided (GSA communicated to PSS its assessment of the specialists but left the decision of termination to PSS), Mr. Caison's regular 9:00 a.m. to 5:00 p.m. business hours with GSA, Mr. Caison's consultant invoices bearing the note, "work performed on PSS task order . . . under the direction of GSA project manager" (with the name of the project manager included).[17]

With respect to the fourth and final *Spackman* factor, "whether the service performed by the person hired is a part of the regular business of the one who hired," *Spackman*, *supra*, 590 A.2d at 516; the ALJ concluded that PSS "is not in

---

[17] On remand, the ALJ should consider other relevant case law, such as the following: *The WCIAS*, 2009 DCOAH 112772, 2009 WL 6346458 (Apr. 15, 2009) (unemployment compensation case holding that temporary worker was employee of company that was "similar to a temporary employment agency"); *USA Waste of Md., Inc. v. Love*, 954 A.2d 1027, 1032-37 (D.C. 2008) (assuming that worker was employee of temporary staffing agency and holding that, for purposes of worker's compensation, employee also was employee of company to which worker was assigned).

the real estate business *per se*," but "plac[es] individuals of various specialties in the federal government." We are not convinced that the ALJ has adequately considered this factor. The cursory statement that "PSS is not in the real estate business *per se*" loses sight of the fact that the fourth factor is tied to determining whether PSS's realty specialists placed with GSA were employees or independent contractors. PSS assigned Mr. Caison to serve as a worker for GSA. Hence, the important question is whether PSS's assignment of this function to Mr. Caison was at the heart of PSS's business of providing workers to GSA, that is, whether such an assignment as a realty specialist was part of the "regular business" of PSS.

There may be other factors that the ALJ should consider in determining whether Mr. Caison was an employee or an independent contractor. For example, the ALJ may wish to determine what weight, if any, should be given to the 2007 professional services agreement between Mr. Caison and PSS, in light of the fact that he began his employment in 2002.

In sum, the ALJ incorrectly allocated the burden of proof. Because it is undisputed that PSS paid Mr. Caison for services he provided to GSA, PSS bore the burden of establishing that Mr. Caison was an independent contractor rather

than an employee. We cannot be confident that an erroneous allocation of the burden had no effect on the ALJ's analysis of the *Spackman* factors. Nor can we be certain that the ALJ was aware of our decision in *Hickey*, which discusses the "control" factor articulated in *Spackman*, or some of the other decisions noted in this opinion.

Accordingly, we vacate OAH's decision and remand the case to OAH with instructions to conduct a new analysis of the *Spackman* factors, and any other relevant factor, after being certain of the proper allocation of the burden of proof, and after considering the factual record in this case.[18]

*So ordered.*

---

[18] Given our disposition, we do not address Mr. Caison's other arguments.