*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-AA-0526

SHEA YELEEN HEALTH & BEAUTY, LLC, *et al.*, PETITIONERS,

V.

OFFICE OF WAGE-HOUR, *et al.*, RESPONDENTS.

On Petition for Review of a Decision
of the Office of Administrative Hearings
(2019-OWH-00077)

(Argued April 24, 2025                    Decided September 4, 2025)

*Sarah P. Hogarth*, with whom *Abbey Bowe* was on the briefs, for petitioners.

*Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Thais-Lyn Trayer*, Deputy Solicitor General, and *Lucy E. Pittman*, Senior Assistant Attorney General, filed a Statement in Lieu of Brief in support of respondent Office of Wage-Hour.

*Jason Engel* for respondent Lisa Beck.

Before EASTERLY, MCLEESE, and SHANKER, *Associate Judges*.

SHANKER, *Associate Judge*: Petitioner Shea Yeleen Health and Beauty, LLC, is a small business that imports shea butter from women-owned businesses in Ghana and sells the substance in bulk to other companies and in beauty products that Shea

Yeleen makes; petitioner Rahama Wright is Shea Yeleen's founder, owner, and chief executive officer. In the spring of 2017, Ms. Wright hired respondent Lisa Beck to provide communication, marketing, and sales support focusing on social media. Ms. Beck stopped working regularly for Shea Yeleen at the end of September 2018. Since then, the parties have been engaged in a dispute over unpaid wages under the D.C. Wage Payment and Collection Law (WPCL), D.C. Code § 32-1301 et seq., which requires employers to timely pay an employee earned wages in the event of a discharge or resignation and provides for liquidated damages and a statutory penalty when employers fail to timely pay.

This is the second time the dispute has come before this court on a petition for review of an order of the Office of Administrative Hearings (OAH). Following the first petition by Shea Yeleen and Ms. Wright (to whom we will hereafter collectively refer as Shea Yeleen) from an order finding them liable under the WPCL, we concluded that Ms. Beck had worked in a dual capacity—sometimes as an employee and sometimes as an independent contractor. *Wright v. Off. of Wage Hour*, 301 A.3d 660, 678 (D.C. 2023). Because the WPCL covers only the hours that Ms. Beck worked as an employee, we remanded for OAH to determine those hours and adjust Ms. Beck's damages award and the statutory penalty accordingly. *Id.* at 682-85.

On remand, the Administrative Law Judge (ALJ) concluded that Ms. Beck spent nearly 600 hours working as an employee for Shea Yeleen, which resulted in damages of roughly $26,000 after adjusting for certain payments that Shea Yeleen had made to Ms. Beck. The ALJ also imposed a statutory penalty on Shea Yeleen.

In its second petition for review before us now, Shea Yeleen makes three general arguments. First, Shea Yeleen asserts that the ALJ erred in finding a WPCL violation because Shea Yeleen paid Ms. Beck conceded wages and, in its view, the WPCL does not apply to disputed wages. Second, Shea Yeleen contends that the ALJ erroneously placed on it the burden of proving that specific work tasks at issue were independent contractor rather than employee tasks, and, because the court erred with respect to the burden of proof, it also erred in calculating the hours that Ms. Beck worked, and was uncompensated, as an employee. Third, Shea Yeleen argues that the ALJ erred in determining which of Shea Yeleen's payments to Ms. Beck should count in Shea Yeleen's favor as employee compensation, in part because, in Shea Yeleen's view, the burden of proving what the payments were for should have been placed on Ms. Beck. We disagree on all counts and affirm the OAH final order.

First, we clarify that under the current version of the statute, where there is a "bona fide dispute concerning the amount of wages due" and the employer pays the

"amount of wages which he concedes to be due," the employee can still "pursue any such balance of unpaid wages and related damages, interests, costs, and penalties." D.C. Code § 32-1304.  Unlike the previous version of the statute, which contained essentially a statutory exception that allowed employers to refuse to pay disputed wages while remaining in compliance with the WPCL, *see* D.C. Code § 32-1304 (1998), the statute now allows employees to maintain a WPCL claim for disputed wages where the employer paid undisputed wages.   D.C. Code § 32-1304. Therefore, even assuming that Shea Yeleen timely paid Ms. Beck any conceded wages, Ms. Beck could continue her effort to recover any unpaid wages.

Second, we conclude that the burden of proof to show which hours Ms. Beck spent as an employee and which hours she spent as an independent contractor shifted to Shea Yeleen because Shea Yeleen failed to keep records of Ms. Beck's hours, Ms. Beck's records were imprecise, and Ms. Beck presented evidence to show, as a matter of just and reasonable inference, the amount of work she had performed as an employee for Shea Yeleen.  *See* D.C. Code § 32-1308.01(e)(4)(A)-(B).  Once the burden shifted, Shea Yeleen had to present "compelling evidence of the precise amount of work performed" or "compelling evidence to negate the reasonableness of the inferences drawn from the complainant's evidence."  *Id.* § 32-1308.01(e)(5). Because Shea Yeleen failed to carry its burden, the ALJ did not err in using Ms. Beck's evidence to infer the amount of work she had done as an employee.  And

since the ALJ applied the correct burden, Shea Yeleen's argument that the ALJ overestimated Ms. Beck's employee hours similarly fails because it rests on the premise that Ms. Beck bore the burden of proof.

Third, Shea Yeleen's argument that the ALJ improperly allocated the payments that Shea Yeleen made to Ms. Beck fails. The burden of proof on this issue also shifted to Shea Yeleen because its records of compensation provided to Ms. Beck were imprecise or inadequate, and the ALJ's allocations are supported by substantial evidence in the record.

## I.    Background

The petition for review before us largely centers around a disagreement over how many hours Ms. Beck worked as an employee versus as an independent contractor. Although resolving that disagreement would seem to require simply categorizing the activities Ms. Beck performed based on her invoices, this case is not so simple. Ms. Beck submitted invoices to Shea Yeleen for nearly one thousand hours of work, but did not provide descriptions of what she worked on for over one-third of those hours. Accordingly, the ALJ had to engage in some approximations

and extrapolations, and Shea Yeleen takes issue with the manner in which the ALJ did so.

## A.     Factual Background

In hiring Ms. Beck in 2017, Ms. Wright sent Ms. Beck a contract that specified that Ms. Beck would be an independent contractor and "provide services of 20-60 hours a month."  The contract limited Ms. Beck's compensation to an hourly rate and reimbursement for out-of-pocket costs.  Ms. Beck was to track her time and submit invoices for payment.  Ms. Beck began work for Shea Yeleen in June 2017 and continued working after the contract expired in September 2017.

Ms. Beck's work for Shea Yeleen fell into three broad categories: social media, events, and administrative work.  Her invoices reflect that her social-media work included posting on Instagram, Twitter, and Facebook and producing a newsletter.   Ms. Beck's administrative tasks included receiving deliveries; packaging, mailing, and delivering Shea Yeleen products; organizing Shea Yeleen's office and acting as its receptionist; advertising a sublease of that office; and completing other work labeled on Ms. Beck's invoices as "admin."

Ms. Beck's invoices in 2017 and the first months of 2018 lacked detailed breakdowns of how she spent her time.  At various points, Ms. Wright directed

Ms. Beck to include more detail in her invoices, including avoiding categorizing activities as "other." Beginning in March 2018, the invoices became more detailed. Initially, Ms. Wright paid Ms. Beck using business checks; in March 2018, at Ms. Beck's request, Ms. Wright began paying by Venmo.

Ms. Beck initially submitted monthly invoices to Shea Yeleen but eventually began sending them less frequently because the company was slow in paying her. Ms. Beck stopped working regularly for Shea Yeleen at the end of September 2018. Ms. Beck stayed in touch with Ms. Wright and when the two met for dinner in October 2018, Ms. Wright asked Ms. Beck to submit any outstanding invoices. When Ms. Beck eventually emailed Ms. Wright a spreadsheet of outstanding invoices, she requested $11,642.60. Ms. Beck's demand for over $11,000 "shocked" Ms. Wright, who referred to the sixty-hours-per-month cap that had been set forth in the (expired) contract.

### B. Procedural Background

### 1. Office of Wage-Hour Proceedings

After Ms. Wright and Ms. Beck were unable to reach an agreement over payment on Ms. Beck's outstanding invoices, Ms. Beck filed a claim for unpaid wages with the Office of Wage-Hour (OWH). OWH issued an initial determination

awarding Ms. Beck $11,491.90 for back wages and $34,475.70 for liquidated damages, as well as an administrative penalty of $18,750. After OWH's initial determination but before an OAH hearing, Ms. Wright paid Ms. Beck $4,223.44, an amount she agreed Ms. Beck was owed under the contract's sixty-hours-per-month cap.

## 2. OAH Proceedings

Shea Yeleen appealed the OWH decision to OAH, asserting that Ms. Beck had performed her work as an independent contractor, not an employee. After a hearing, the ALJ issued a final compensation order in Ms. Beck's favor. While the ALJ found the question "close," he concluded that Ms. Beck was an employee, not an independent contractor. The ALJ also found that Shea Yeleen had no independent records to dispute the hours that Ms. Beck worked and that Ms. Beck satisfied her burden by showing "as a matter of just and reasonable inference," D.C. Code § 32-1308.01(e)(4)(B), the hours of work she performed and the compensation that was due. The ALJ awarded Ms. Beck $11,516.89 in unpaid wages and $34,550.67 in liquidated damages pursuant to D.C. Code § 32-1303(4), minus a credit of $4,223.44 for the amount Ms. Wright paid Ms. Beck after the case was filed, for a total of $41,844.12. The order also imposed a $13,450 statutory penalty.

### 3. First Petition for Review

Petitioning for review in this court, Shea Yeleen argued that the ALJ erred in concluding that Ms. Beck was an employee instead of an independent contractor. *Wright v. Off. of Wage Hour*, 301 A.3d 660, 678 (D.C. 2023). We concluded that the issue was not binary: "Ms. Beck provided social-media services to Shea Yeleen as an independent contractor and provided events-related and administrative services as an employee." *Id.* We remanded for OAH to make a "quantitative approximation" of what "portion of the unpaid wages were attributable to Ms. Beck's social-media work, and what portion was attributable to her other work for Shea Yeleen (and thus subject to trebling), and to redetermine the damages awards." *Id.* at 683.

We left "it to OAH to determine how to approximate the amounts attributable to the social-media and non-social-media work." *Id.* We recognized that Ms. Beck's non-detailed invoices posed a problem for calculating which hours she spent as an employee versus as an independent contractor. *Id.* at 683-84. We noted that "one approach on remand" would be "for the ALJ to determine the percentages indicated on Ms. Beck's detailed invoices, and to apply an average percentage to the time shown on the non-detailed invoices to approximate the total time Ms. Beck spent on her work as an 'employee' during the entire time period at issue." *Id.* We also

observed that another "approach might be the one suggested by petitioners, i.e., applying an assumption that beginning in late July 2018, Ms. Beck's regular in-office work caused her status to evolve to that of an employee." *Id.* at 684.

### 4. Post-Remand Proceedings

On remand, both parties submitted declarations explaining which of Ms. Beck's job descriptions should be categorized as employee work and which should be categorized as independent-contractor work. After reviewing those declarations, the testimony of the parties, and the evidentiary record, the ALJ categorized Ms. Beck's work labels. For example, the ALJ found that Ms. Beck's "Event Prep," "Admin," and "Organizing" labels all related to her time spent as an employee, whereas her "Influencer Campaign," "Newsletter," and "Twitter" labels related to her time spent as an independent contractor. Based on those categorizations, the ALJ concluded that, out of Ms. Beck's 721 labeled hours, Ms. Beck spent 380 hours as an employee and 341 hours as an independent contractor.

Turning next to Ms. Beck's work hours that lacked any labels, the ALJ determined that neither Ms. Beck's nor Shea Yeleen's proposed method for apportioning the unlabeled hours was persuasive. The ALJ began by stating that Shea Yeleen had the "burden to prove that [Ms. Beck's] services were rendered as

an independent contractor." The ALJ acknowledged that ordinarily "an independent contractor has the burden to prove the scope of work that was performed and the remuneration that is due." Instead of applying that burden, however, the ALJ applied the burden-shifting framework in *Caison v. Project Support Services*, 99 A.3d 243, 250 (D.C. 2014), under which it becomes the employer's burden to prove that services were rendered as an independent contractor after a worker proves that they were paid for providing services as an employee under the WPCL.

With that burden in mind, the ALJ adopted the first approach suggested by this court, which was to "determine the percentages indicated on Ms. Beck's detailed invoices and to apply an average percentage to the time shown on the non-detailed invoices to approximate the total time Ms. Beck spent on her work as an 'employee.'" Based on that approach, the ALJ determined that Ms. Beck's work as an employee accounted for 52.7% of her labeled time. Then, applying that same percentage to Ms. Beck's 242 unlabeled hours, the ALJ found that Ms. Beck spent 127.75 of those hours as an employee. Adding Ms. Beck's labeled and unlabeled employee time together for a total of 507.5 employee hours, the ALJ determined that Ms. Beck was owed $7,105 in employee wages (507.5 hours multiplied by Ms. Beck's $14 per hour rate).

After concluding that Ms. Beck was owed $7,105 in employee wages, the ALJ categorized payments that Shea Yeleen had made to Ms. Beck. Three amounts were at issue. First were certain payments made by check and Venmo totaling $3,150. Of this amount, $1,350 was characterized by Shea Yeleen as for social media work, meaning Ms. Beck's independent contractor work, and therefore was not considered by the ALJ. The ALJ applied the same employee-independent contractor ratio to the remaining $1,800, resulting in an allocation of $949 in employee wages, which the ALJ deducted from the amount of unpaid wages. Second was a $2,500 check that Shea Yeleen sent to Ms. Beck; the ALJ declined to credit the payment in part because Shea Yeleen mailed it to the wrong address and Ms. Beck did not receive it. Third, the ALJ acknowledged that Shea Yeleen sent Ms. Beck a check for $4,223.44, but because there was no "evidence of how the payment was meant to be apportioned between employee and independent contractor duties," the ALJ again prorated the payment using the ratio applied to Ms. Beck's hours, resulting in a credit of $2,225. And because that amount "was not paid within the time required by the statute," the ALJ concluded that it did "not reduce the amount of wages that [Ms. Beck] is owed or the amount of liquidated damages."

The ALJ also determined that Shea Yeleen was subject to a $50 daily statutory penalty for the 269 days between February 18, 2019 (when Ms. Beck submitted her

itemized invoices and demanded payment) to November 14, 2019 (when OWH issued its initial determination), for a statutory penalty of $13,450.

After Ms. Beck moved for reconsideration of the award, the ALJ adjusted Ms. Beck's award upward to $26,549.74. The ALJ reduced Ms. Beck's labeled hours spent as an independent contractor from nearly 204 hours to just over 120 hours. That reduction also changed the unlabeled time ratio, resulting in a revised percentage of 59.6% of time spent on employee work (as opposed to 52.7%). In total, that resulted in roughly 595.7 hours of Ms. Beck's time spent on employee activities, which meant $8,339.34 in unpaid employee wages. We include a table of the award calculation for clarity.

| | *Award Calculation* |
|---|---|
| 379.75 | Labeled employee hours |
| + 215.95 | Unlabeled approximation of employee hours |
| = 595.7 | *Total employee hours* |
| x $14.00 | Multiplied by hourly rate ($14/hour) |
| = $8,339.34 | *Total wages as an employee* |
| - $1,072.68 | Subtract pro-rated payments allocated to wages |
| = $7,266.66 | *Total unpaid employee wages* |
| + $21,799.98 | Add treble damages ($7,266.66 x 3) |
| = $29,066.64 | *Total Award* |
| - $2,516.90 | Subtract allocation of $4,223.44 payment (59.6% x 4,223.44) |
| = **$26,549.74** | **Net Award** |

The ALJ did not modify the $13,450 statutory penalty. This petition for review followed.

## II.    Standard of Review

We "must affirm an OAH decision when (1) OAH made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) OAH's conclusions flow rationally from its findings of fact." *Hickey v. Bomers*, 28 A.3d 1119, 1122 (D.C. 2011) (quoting *Morris v. U.S. Env't Prot. Agency*, 975 A.2d 176, 180 (D.C. 2009)). "Factual findings are supported by substantial evidence when there is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Young v. D.C. Dep't of Emp. Servs.*, 268 A.3d 827, 830 (D.C. 2022) (citation modified). We review legal questions de novo. *Nwokwu v. Allied Barton Sec. Serv.*, 171 A.3d 576, 582 (D.C. 2017).

## III.    Analysis

Shea Yeleen challenges the ALJ's award on several grounds. First, Shea Yeleen argues that it did not violate the WPCL because it refused to pay Ms. Beck only disputed amounts, which, it asserts, it was allowed to do under D.C. Code § 32-1304. Second, Shea Yeleen argues that it was Ms. Beck's burden to prove

uncompensated employee work, which encompassed a burden to prove that her uncategorized hours were spent on employee activities. On the premise that its burden-of-proof argument is correct, Shea Yeleen then takes issue with the ALJ's quantitative approximation of Ms. Beck's hours spent as an employee. Third, Shea Yeleen challenges the ALJ's treatment of the payments that Shea Yeleen made to Ms. Beck.

## A. Bona Fide Dispute

The WPCL requires employers to pay a former employee's wages "upon the next regular payday or within [seven] days" after an employee quits or resigns, whichever is earlier. D.C. Code § 32-1303(2). Shea Yeleen contends, however, that the WPCL "requires only that an employer pay *undisputed* amounts of wages owed within the statutory timeframe."

Shea Yeleen's position cannot be reconciled with the plain language of D.C. Code § 32-1304, after the section was amended in 2015. It is true that that provision states that, "[i]n case of a bona fide dispute concerning the amount of wages due, the employer shall give written notice to the employee of the amount of wages which he concedes to be due, and shall pay such amount, without condition, within the time required by §§ 32-1302 and 32-1303," while noting that "acceptance by the employee of any payment made hereunder shall not constitute a release as to the

balance of his claim." D.C. Code § 32-1304. But the following sentence—which Shea Yeleen does not mention—states that "[t]he employee . . . shall be able to pursue any such balance of unpaid wages and related damages, interest, costs, and penalties." *Id.* Although Ms. Beck did not make this exact argument in her brief, she quoted the current language of the statute, which is fatal to Shea Yeleen's argument.

Shea Yeleen relies on *Fudali v. Pivotal Corp.*, 310 F. Supp. 2d 22 (D.D.C. 2004), in which the D.C. federal district court concluded that an employer's timely payment of undisputed wages due "constitute[s] the payment that relieves it of liability under the Act," *id.* at 28, and that Section 32-1304 "carves out an exception that allows employers to refuse to pay disputed wages and still remain in compliance with the Act," *id.* at 28-29. *Fudali*, however, interpreted a prior version of Section 32-1304, which, in its final sentence, provided: "Payment in accordance with this section shall constitute payment for the purposes of complying with §§ 32-1302 and 32-1303, only if there exists a bona fide dispute concerning the amount of wages due." *Id.* at 27; D.C. Code § 32-1304 (1998). That sentence was replaced with the following: "The employee or Mayor shall be able to pursue any such balance of unpaid wages and related damages, interest, costs, and penalties." Wage Theft Prevention Amendment Act of 2014, D.C. Law 20-157, 61 D.C. Reg. 10157 (2015) (codified at D.C. Code § 32-1304). The statute's current version—

which applies to this case—allows an employee to pursue unpaid wages (and related damages, interests, costs, and penalties) even if those wages are disputed and the employer paid conceded wages. D.C. Code § 32-1304.

Thus, even assuming Shea Yeleen met the statute's requirements—giving written notice to Ms. Beck and paying conceded wages within the applicable WPCL timeframe—that payment does not constitute compliance with the WPCL. Accordingly, Ms. Beck could pursue unpaid wages, along with related damages, interests, costs, and penalties, and Section § 32-1304 is not a ground for reversal.

## B. Burden of Proof and Allocation of Hours Worked

Shea Yeleen's second argument is that the ALJ erred by concluding that Shea Yeleen bore the burden to prove which hours Ms. Beck performed as an independent contractor after Ms. Beck introduced evidence from which the ALJ inferred which unlabeled hours were spent as an employee. Ms. Beck argues that because her records included unlabeled time, the burden shifted to Shea Yeleen to prove that her unlabeled time should not be apportioned based on the ratio of her categorized time that she spent as an employee and independent contractor.

We begin by explaining the scope of this issue. In *Wright v. Office of Wage Hour*, 301 A.3d 660 (D.C. 2023), we concluded that the time Ms. Beck spent on

social-media activities was time spent as an independent contractor whereas the time she spent on administrative activities was time spent as an employee. *Id.* at 678. Many of Ms. Beck's invoiced hours included descriptions or labels of how she spent her billed time, such that the time could be categorized into social-media activities or administrative activities. But not all of Ms. Beck's billed time included labels, leaving approximately 360 hours that could not be categorized by label alone. For those hours, we suggested that the ALJ on remand could "apply an average percentage to the time shown on the non-detailed invoices to approximate the total time Ms. Beck spent on her work as an 'employee'" during the unlabeled hours. *Id.* at 683-84. Thus, this burden of proof impacts only the unlabeled hours and how and whether those hours should be counted as hours Ms. Beck worked as an employee.

D.C. Code § 32-1308.01(e)(4) states that, for purposes of the WPCL, among other wage protection laws, the "burden of proof by a preponderance of the evidence shall rest upon the complainant, but shall shift to the respondent" when two conditions are met:

> (A) A respondent failed to keep records of an employee's hours worked, or records of compensation provided to an employee are imprecise, inadequate, missing, fraudulently prepared or presented, or are substantially incomplete; and

> (B) A complainant presents evidence to show, as a matter of just and reasonable inference, the amount of work done

> or the extent of work done or what compensation is due for the work done.

D.C. Code § 32-1308.01(e)(4)(A)-(B). When those conditions are met,

> [T]he respondent must present compelling evidence of the precise amount of work performed and exact compensation promised or present compelling evidence to negate the reasonableness of the inferences drawn from the complainant's evidence. If the respondent fails to meet this burden, the administrative law judge shall award damages based on the complainant's evidence and may award approximate damages where necessary.

*Id.* § 32-1308.01(e)(5).

It is undisputed that Shea Yeleen failed to keep records of Ms. Beck's hours worked, satisfying the first condition of D.C. Code § 32-1308.01(e)(4).[1] As long as the second condition was met—that Ms. Beck presented evidence to show, as a matter of just and reasonable inference, the amount of work done—then the burden shifted to Shea Yeleen to present compelling evidence to rebut Ms. Beck's evidence. *Id.* § 32-1308.01(e)(4)-(5).

---

[1] Section 32-1308.01(e)(4)(A) appears to contemplate an employer keeping records of the employee's hours worked and compensation provided. D.C. Code § 32-1308.01(e)(4)(A). In this case, Shea Yeleen delegated recordkeeping to Ms. Beck, which it was entitled to do, but in doing so, to the extent Ms. Beck performed work as an employee, it failed to keep its own records of hours worked and kept "inadequate" or "substantially incomplete" records of compensation provided. *Id.*

The ALJ found that Ms. Beck presented such evidence because her invoices, which were "substantially accurate," established, as a matter of just and reasonable inference, the amount of work she performed as an employee for Shea Yeleen. Even though Ms. Beck's invoices contained unlabeled hours, the labeled hours allowed the ALJ to infer—by applying the percentage of her labeled time spent as an employee to her unlabeled hours—the number of unlabeled hours that Ms. Beck had spent as an employee. The finding that Ms. Beck presented evidence to meet the second condition of § 32-1308.01(e)(4) is supported by substantial evidence in the record, namely Ms. Beck's labeled invoices that allowed the ALJ to approximate the portion of the unlabeled hours that Ms. Beck worked as an employee. And thus, the ALJ correctly shifted the burden to Shea Yeleen to disprove that Ms. Beck spent her unlabeled hours in the same employee-to-independent-contractor ratio as her labeled hours.

This approximation was proper, as we have stated that when an employer "fails to discharge its burden of producing accurate or adequate records, the court must calculate and award damages, even if only an approximation." *District of Columbia v. Bongam*, 271 A.3d 1154, 1163 (D.C. 2022). Moreover, this burden-shifting framework in D.C. Code § 32-1308.01(e)(4) is not unique to the WPCL. In the context of the District's Unemployment Compensation Act, which also involves determining whether an individual's work was as an employee or as an independent

contractor, we have held that if a "claimant shows that he or she has been paid for providing services, the alleged employer bears the burden (both of production and persuasion) to prove that the claimant was an independent contractor rather than an employee." *Caison v. Project Support Servs.*, 99 A.3d 243, 250 (D.C. 2014).

In short, the burden shifted to Shea Yeleen to prove that Ms. Beck's unlabeled hours were not spent in the same independent-contractor-to-employer ratio as her labeled hours. Because Shea Yeleen did not make that showing, we affirm the ALJ's determination that 59.6% of Ms. Beck's unlabeled time was spent as an employee.

One of Shea Yeleen's remaining arguments on appeal—that the ALJ inflated Ms. Beck's employee hours—rises and falls with Shea Yeleen's success on its burden-of-proof argument. Throughout Shea Yeleen's briefing on that issue, it argues that because the ALJ erred in allocating the burden of proof, the ALJ erred in calculating Ms. Beck's employee hours worked. Because we conclude that the burden shifted to Shea Yeleen, we affirm the ALJ's allocation of Ms. Beck's unlabeled hours.

### C. Burden of Proof and Allocation of Payments

Shea Yeleen also asserts that it paid Ms. Beck a total of $9,873; that Ms. Beck bore the burden to prove that those payments were not employee wages; and that,

with the burden falling on Ms. Beck, the ALJ erred in declining to fully credit the payments to Shea Yeleen as paid wages.

We conclude that the burden-shifting framework set forth in D.C. Code § 32-1308.01(e)(4) applies not only to the characterization of hours an employee worked but also to the characterization of compensation provided to an employee. Although the employee-complainant bears the burden to show non-payment of earned wages, the statute provides that the burden shifts to the employer-respondent if *either* the employer failed to keep records of the employee's hours worked *or* records of compensation the employer provided to the employee are, among other things, imprecise, inadequate, or substantially incomplete (and the employee also presents evidence to show, as a matter of just and reasonable inference, the amount of work done or the extent of work done or what compensation is due for the work done). D.C. Code § 32-1308.01(e)(4). The "records of compensation" clause indicates that characterization of compensation provided is treated the same as characterization of hours worked for purposes of the burden of proof. Thus, where an employee complains of non-payment of earned wages, and the employer produces adequate records of compensation provided to the employee, the burden of proof remains on the employee; but where the records of compensation are imprecise or inadequate (and the employee presents evidence to show, as a matter of just and reasonable inference, the amount of work done or the extent of work done or what

compensation is due for the work done), the burden is on the employer to prove that compensation was provided for employee wages.

Applying this framework, we see no error in the ALJ's treatment of the three amounts at issue. First, of the $3,150, Shea Yeleen itself characterized $1,350 as for social media work, and it was therefore reasonable for the ALJ to allocate that amount to Ms. Beck's independent contractor work. The remaining $1,800 was either not described or imprecisely described, and it was therefore reasonable for the ALJ to apply the employee-independent contractor ratio to that amount. Second, it was undisputed that Shea Yeleen mailed the $2,500 check to the wrong address after being told where to mail payments and that Ms. Beck did not receive the payment; the ALJ thus reasonably declined to credit that payment. Third, the $4,223.44 payment also was not characterized, so the ALJ reasonably applied the ratio to that amount as well.

## IV.   Conclusion

For the foregoing reasons, we affirm the ALJ's amended final order.

*So ordered.*